### ELECTRIC STORAGE BATTERY CO. v. ROTHENSIES, Collector of Internal Revenue, etc.

#### No. 8836.

Circuit Court of Appeals, Third Circuit.
Argued Oct. 4, 1945.
Decided Nov. 27, 1945.
Writ of Certiorari Granted March 25, 1946.
See 66 S.Ct. 825.

522

Assts. to the Atty. Gen., Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., on the brief), for appellant.

Laurence H. Eldredge, of Philadelphia, Pa. (Charles C. Norris, Jr., William P. Cairo and Norris, Lex, Hart & Eldredge, all of Philadelphia, Pa., on the brief), for appellee.

Before ALBERT LEE STEPHENS, MARIS, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

This is a suit by a taxpayer to recover from the Collector a sum which it alleges was wrongfully collected. The plaintiff was successful in the District Court and the Collector appeals.

The fact basis for the lawsuit is this: From 1919 to 1926 the taxpayer paid a large sum in excise taxes on the sale of its storage batteries; the government's exaction was based on the theory that the batteries were automobile accessories. Taxpayer disputed the legality of the tax and took appropriate action to preserve its rights to claim refund. In 1935 the government repaid to the taxpayer something more than a million dollars in settlement of a judgment which taxpayer had obtained to recover back the tax money paid by it. The period from 1919-1922 was not covered by the judgment, as claim for refund for the payments made during these years was barred by the statute of limitations. The money paid to the taxpayer in 1935 was treated as income for 1935 by the Commissioner, and this treatment resulted in the assessment of additional income and excess profits taxes for that year against the taxpayer. The taxpayer paid what was demanded with appropriate reservation of its rights and then sued to recover its money.

The plaintiff urged below and repeats here that payment of the judgment by the United States was not income to it in 1935. The District Court ruled against this contention and so do we. It is sufficient on this point to refer to our own decision and authorities cited in Freihofer Baking Co. v. Commissioner, 3 Cir., 1945, 151 F.2d 383; 45-2 USTC par. 9400.

The interesting question is the one made the basis of the decision in the taxpayer's favor by the District Court. It involves taxpayer's right to meet its extra imposed tax liability of 1935 by recouping the pay-

Lelant T. Atherton, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen. and Sewall Key and J. Louis Monarch, Sp.

ments it made from 1919-1922 upon this incorrectly imposed excise tax on the sale of its batteries. Refund for these payments, it will be remembered, is barred by lapse of time. The taxpayer admits this, but says that when being pressed to pay income tax on refund for some of those payments, it can recoup for the taxes it was illegally compelled to pay, even though it could not sue for them.

■ For the purpose of deciding the rights and liabilities of the parties to this controversy, we may treat the case as though the taxpayer was being sued by the government and had set up its claim for recoupment to cut down the amount of recovery against it. The taxpayer does not lose his rights by the fact that he pays first and disputes the correctness of the payment later, if he takes the proper steps to preserve his claim. The difference between a claim by the government for taxes and the ordinary claim by one private litigant against another was discussed by the Supreme Court in Bull v. United States, 1935, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1241. That decision is authority for our approach to the question here.

■ Bull v. United States is also authority for the proposition that the defense of recoupment is not barred by the statute of limitations "so long as the main action itself is timely." 295 U.S. at page 262, 55 S.Ct. at page 701, 79 L.Ed. 1241. That is, if the United States had sued this taxpayer for an alleged unpaid tax for 1935, the taxpayer would not be barred from setting up in recoupment a claim otherwise proper as recoupment, because suit on that claim by the taxpayer would be barred by the statute of limitations.

Is the taxpayer's claim in this case a proper subject for recoupment as against the government's claim for unpaid income tax for 1935? The Court in Bull v. United States says recoupment is in the nature of a defense "arising out of some feature of the transaction upon which the plaintiff's action is grounded." The turning point of this case is whether the taxpayer's claim meets this test. "Transaction" is manifestly the key word. Is taxpayer's claim for recoupment part of the "transaction" on which the government's claim for additional income tax for 1935 is grounded?

The argument for the taxpayer can be simply put. The additional tax asked for by the government was not from taxpayer's income from its general business, but from the payment to the taxpayer of the incorrectly collected excise tax on the sale of its batteries. The recoupment asked for was a stale claim for three additional years of payments on the same tax. Both government demand and taxpayer's claim had their origin in the same source in one sense. They grew out of seven years of improperly assessed excise taxes on the sale of batteries. In another sense, obviously, the sale of each battery over the seven years was a separate matter, carrying its own burden of tax and not the same transaction as that of the sale of another battery several years away, or, for that matter, another battery to a different buyer the same day. We doubt whether even the government argument would insist that individual battery sales constituted each its own "transaction". How many sales together make up a "transaction"? We see no reason for lumping them by calendar years. The nature of the merchandise sold was the same; the imposition of the tax was the same. What the taxpayer wants us to do, and what it persuaded the District Court to do, is to regard the sales over several years of this merchandise and the tax thereon as a "transaction" sufficient for application of the recoupment doctrine.

Recoupment, unlike set-off and counter-claim, is a product of judicial, not legislative, action.[1] There is little or no help to be had from dictionary or judicial definition or description of the word "transaction" when applied in other situations, to its meaning as used here. If one turns to a discussion of its meaning in statutory counterclaim, he finds a recognized authority stating as follows: "The only test which can be consonant with the function of the counterclaim is whether the particular counterclaim could, in the court's discretion, be expediently tried with the plaintiff's case."[2] This consideration of expediency is said to be back of the "transaction" element in recoupment[3] and is repeated in Water-

---

[1] Short summaries describing it may be found in Restatement, Judgments, p. 217, and in a paper "The Pleading of Counterclaims" by Charles E. Clark and Leighton H. Surbeck, (1927–1928) 37 Yale L.Jour. 300.

[2] Clark article, supra, p. 316.

[3] "The doctrine of Recoupment in Fed-

man's textbook on the subject,[4] and ought to be applied where possible to produce results which accord with one's sense of fairness. It is not to be construed like a penal law and to have each word used in describing its application held to a precise and technical meaning. We need not take it as the sole criterion, and for the purpose of deciding this case, do not need to settle with exactness what the limits are. The doctrine of recoupment is based on concepts of fairness.[5] We see no reason, therefore, for hedging the "transaction" part of the requirement within close quarters, especially where, as here, there is a logical connection between main claim and recoupment claim. As to the fairness of the matter, we agree with the District Court where his opinion stated [57 F.Supp. 731, 735]: "Every consideration of fair dealing demands that the taxpayer be credited as against its present liability with the taxes which it has been illegally compelled to pay, and I think that the decisions of the courts fully justify such a solution."

■ All this leads to a conclusion that the taxpayer should prevail, unless some rule preventing recovery stands in the way. The same result is indicated by such judicial authority as there is upon the point. Bull v. United States, supra, is the foundation case.[6] In that case, however, the main claim and recoupment claim were more closely connected than they are here. The District Court believed Dixie Margarine Co. v. Commissioner, 6 Cir., 1940, 115 F.2d 445, to be directly in point. We agree. Appellant admits the decision is in point, but says it is wrong. It also says that it is deprived of any persuasive authority because it was an appeal from the Board of Tax Appeals and in a later decision (Commissioner v. Gooch Mill & Elevator Co., 1943, 320 U.S. 418, 64 S.Ct. 184, 88 L.Ed. 139) the Supreme Court has held that the Board of Tax Appeals has no jurisdiction of recoupment. That the Su-

preme Court has so held there is no doubt. Equally clear, we think, is that whatever value the Dixie Margarine decision has for us in its discussion of recoupment is not lessened by the fact that if the case came up again, it would go off on the jurisdictional question. There is no doubt that in the instant case, the District Court was a tribunal with general equity powers, and if recoupment is called for, it can be allowed. Whatever may be the status of the Dixie Margarine decision it is, of course, not binding upon us, and we must take the responsibility of deciding the present litigation in accordance with the law as we see it. There is no disposition to evade that responsibility.

### Statutory Provisions

The government further contends that recoupment is not available to the taxpayer here because of the statutory bar of §§ 608(a) and 609(b) of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Code, §§ 3774(a), 3775(b). It cites the following language: from § 608

"A refund of any portion of an internal revenue tax * * * shall be considered erroneous—

"(a) If made after the expiration of the period of limitation for filing claim therefor, * * *."
and from § 609

"A credit of an overpayment in respect of any tax shall be void if a refund of such overpayment would be considered erroneous under section 608."

Then it cites McEachern v. Rose, 1937, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46. The conclusion urged is that since the time for filing claims for refund of the 1919-1922 taxes had expired, a refund of them would be erroneous, and by the same token, a credit of the overpayment represented by those taxes given to taxpayer for 1935 taxes would be void under § 609(b). The conclusion urged seems a long journey from the language of the statute cited.

eral Taxation" by David H. McConnell, (1942) 28 Va.L.Rev. 577.

4 Waterman on Set-off, Recoupment, and Counterclaim (1869), 552. "Although recoupment is only available where both demands spring from one transaction; yet opposing claims, in order to be adjusted in this way in one action, need not be of the same character."

5 See the language of the Court in Crossett Lumber Co. v. United States, 8 Cir., 1937, 87 F.2d 930, 932, 109 A.L.R. 1348.

6 McConnell, The Doctrine of Recoupment In Federal Taxation, (1942) 28 Va. L.Rev. 577, 586: "The leading case on the application of recoupment in tax cases is Bull v. United States." At page 607, the article states as a conclusion, "Thus four principles seem apparent: (1) That the broad recoupment doctrine of Bull v. United States is still applicable in tax cases. * * *"

Does the statutory language mean that a taxpayer cannot have credit by recoupment in a case where he was too late to prosecute a claim for refund?

The first trouble we have with that conclusion is Bull v. United States, already quoted from. There, as here, the claim of the taxpayer arose before the 1928 statute; the litigation in which it was set up as recoupment came later. The result in the Bull case seems contrary to the argument being discussed here, and that decision met no adverse criticism in McEachern v. Rose and was cited with apparent approval in Commissioner v. Gooch Mill. & Elevator Co., 1943, 320 U.S. 418, 64 S.Ct. 184, 88 L.Ed. 139.

Argument for the taxpayer points out that the sections under consideration have nothing to do with courts; they are part of the Administrative Provisions in both the 1928 Act and in the later codification, and that they talk the language of direction to administrative officers in terms like making a refund or giving a credit. There is some persuasive force in this argument, but it is not consistent with the view of the Supreme Court in McEachern v. Rose, supra. There it is said (302 U.S. at pages 59, 60, 58 S.Ct. at page 85, 82 L.Ed. 46) "We may assume that, in the circumstances, equitable principles would preclude recovery in the absence of any statutory provision requiring a different result. But Congress has set limits to the extent to which courts might otherwise go in curtailing a recovery of overpayments of taxes because of the taxpayer's failure to pay other taxes which might have been but were not assessed against him." The Court treats these sections as making a rule for courts as well as commissioners and collectors. It is to be noted, however, that the language quoted has to do with government attempt to apply recoupment against a taxpayer. Later in the same paragraph the language of the opinion says: "These provisions preclude the government from taking any benefit from the taxpayer's overpayment by crediting it against an un-

paid tax whose collection has been barred by limitation."

Taxpayer makes a strong point of the fact that the McEachern decision and others since [7] have used the limitation of the sections quoted against the government only.[8] Not only does taxpayer point to the result of the decisions, but offers a reason for the application to government and not to taxpayer which appeals to us as having force. It has to do with the public policy involved in protecting taxpayers who pay taxes first and litigate their correctness later. If a taxpayer is advised that a tax is improperly assessed he should not be in a worse position if he pays and seeks refund than if he forced tax authorities to proceed against him. In the latter case, in the defense he makes, he will not have any question of an earlier tax, recovery of which is barred by the statute. Neither should he, if he pays the improperly imposed tax and seeks his money back.[9]

■ No such considerations apply to a defending taxpayer if his case comes within the equitable principles of recoupment. Such limitations, then, as the quoted sections impose are applicable to government and not to taxpayer. The public policy in inducing prompt payment of taxes is stronger than preservation to the government of its equitable rights of recoupment. We think this theory is sound and we accept it.

■■ There is a further reason for rejecting the application of §§ 608 and 609 to this case and which was adopted by the court below upon the authority of West Virginia Pulp & Paper Co. v. McElligott, D.C.S.D.N.Y. 1941, 40 F.Supp. 765. It is to the effect that the right to recoupment is a substantive right, and that the right vested when the taxes were improperly exacted, back in 1919-1922. The statute in question came years later. It should not be interpreted retroactively to cut off vested rights. Government's attempt to distinguish the cited case appears to us unconvincing. We think the limitation of the statute to cases where the taxpayer's

[7] American Light & Traction Co. v. Harrison, 7 Cir., 1944, 142 F.2d 639; Lyeth v. Hoey, 2 Cir., 1940, 112 F.2d 4, 130 A.L.R. 830; Penn et al. v. Robertson, D.C. M.D.N.C.1939, 29 F.Supp. 386; Crawford et al. v. Heiner, D.C.W.D.Pa.1938, 23 F. Supp. 240.

[8] The paper quoted above, "Recoupment in Federal Taxation", treats the problem of these sections as wholly a question of what obstacle they present to application of the doctrine of recoupment by the government. See p. 588 of 28 Va.L.Rev.

[9] See, along this line, "Estoppel and Recoupment in Federal Taxation * * *", 1939, 52 Harv.L.Rev. 496.

right arose after its passage is probably right, though the application to government and not to taxpayer seems to us a more compelling reason for the taxpayer's position in this case. At any rate, we have no doubt of the correctness of the District Court's conclusion on this point.

## Is This Suit against the Wrong Collector?

Finally, the government says that the taxpayer may not recover by recoupment, tax money which he alleges was illegally collected by another collector than the party to this action. There is no dispute about the general proposition of law behind this argument, especially in view of its latest discussion in United States v. Kales, 1941, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132. We do not think it applies to this litigation.

Literally this lawsuit was brought against Walter J. Rothensics, the collector to whom the plaintiff paid its money for 1935 tax. But as pointed out earlier in this opinion, our analysis of the legal problem is made clearer if we think of this suit as one brought by the United States to recover the alleged deficiency in the 1935 income tax of the taxpayer. In that suit the defendant seeks to recoup the tax payments it made, but which it could not collect because of the lapse of time. Is this recoupment claim an action against a collector, so that a taxpayer's recoupment will depend upon the continuity in office of the same individual as collector? That could be the law, but one does not reach such an unnatural conclusion unless forced to do so.

We think the answer is this: a collector is collecting the government's claim, not his own. Its source is the taxing statute and when the money is collected it goes to the public treasury. If he has improperly collected money, the taxpayer has the common law right to sue him as an individual to get it back. But that does not make the tax receipts collector's individual property, nor his claim against a taxpayer a personal claim of his own. We see no difficulty in a taxpayer's setting up, if proceedings were brought by public authorities, a recoupment claim for taxes paid a predecessor of the present collector. This conclusion is supported by a technical make-weight, justified because of the highly technical nature of the government's argument on this point. Recoupment, unlike statutory set-off and counterclaim, allows for no affirmative judgment for one who successfully asserts it. It is a shield not a sword. The most it can do is to protect one against a recovery by an opponent. A recoupment claim in a tax case is not a suit against a collector at all, but only a defense against what the collector asserts. If this is technical, it is no more so than the argument which it answers.

In a supplemental memorandum the government raises a point first made in oral argument before this Court. It points out that the additional income and excess profits tax for 1935 was not paid until 1938. At that time the taxpayer paid the principal sum with the interest which had then accrued. This is what it now seeks to get back. The Government's argument is that, apart from statute or contract, interest cannot be recovered against the government on the part of a successful claimant. We have no reason now to go into the limits, if any, of the proposition urged. It is quite clear that it has nothing to do with the case. The taxpayer is not seeking interest on an amount which it paid the government, but is seeking to get back cash which it paid. That part of this cash was principal sum and part of it was interest does not change the matter. It is not seeking interest on the cash that it paid, but just to get that cash back.

The point arose because the taxpayer's recoupment claim, while more than sufficient to take care of the principal amount assessed as additional tax in 1935, is not quite large enough to cover both that amount and the interest accrued on it. But the recoupment claim need only counterbalance the principal amount of tax. For if it does then no tax was owing and consequently no interest could rightfully accrue to the government on it. The government cannot keep the interest on late payment of a tax which the taxpayer did not have to pay. The original recoupment claim is relevant only in determining whether the tax had to be paid. Since it did not, both it and the interest paid on it may be recovered.

The conclusion is that the District Court was right and the judgment is affirmed.