**Arthur E. EVANS TRUST**

**v.**

**The UNITED STATES.**

**No. 186–70.**

United States Court of Claims.

July 14, 1972.

Ralph W. Weimer, Columbus, Ohio, attorney of record, and Bruce W. Powell, Columbus, Ohio, for plaintiff.

Ira Mark Bloom, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant. Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, and KUNZIG, Judges.

ON DEFENDANT'S MOTION AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

KASHIWA, Judge.

This is a suit by plaintiff, Arthur E. Evans Trust, by its trustees J. W. Loos, J. W. Hilbert, and Sally A. Loos, for refund of federal income taxes erroneously paid and illegally and erroneously assessed and collected. The sole question is whether certain claims filed were timely. Upon cross-motions for summary judgment filed by plaintiff and defendant, we hold for the defendant, allowing its motion for summary judgment and denying plaintiff's cross-motion for summary judgment.

The facts are undisputed. Arthur E. Evans died on July 24, 1958, leaving a will which divided his residuary estate equally between two trusts, the A Trust and the B Trust. The A Trust consisted solely of certain common stocks, and the testator's wife, Cora S. Evans, was given a power of appointment over this property so that it would be a part of her estate after his death and thus entitle his estate to a marital deduction for its value. The B Trust consisted of certain other shares of common stock and certain high value, but unproductive land. Cora Evans was the income beneficiary of both trusts. The plaintiff herein, the Arthur E. Evans Trust, was established during the administration of Arthur's estate to hold the assets of the A Trust and B Trust in undivided form. It appears that prior to July 5, 1961, the Arthur E. Evans Trust sold the appreciated land in the B Trust to a Knolls

Development Company, for which it received a contract indebtedness payable in installments.

On July 5, 1961, Cora Evans died. Subsequent to her death the Commissioner of Internal Revenue determined, upon audit, that her estate tax return had undervalued the property in the A Trust subject to her general power of appointment. On February 23, 1965, the District Director sent the executors of Cora's estate a notice of a proposed deficiency for the estate.

On September 22, 1965, the District Director issued a statutory notice of deficiency, and thereafter Cora's estate petitioned the Tax Court to set aside the deficiency. After considerable negotiation, that litigation was settled in February, 1967, and the Tax Court entered an order on March 6, 1967, stating that "there is no deficiency in estate tax due from, or overpayment due to, the petitioner." One of the terms of that settlement was that 50 percent of $530,770.40, the agreed-upon value of the Knolls Development Company indebtedness at the time of Cora's death, or $265,385.20, was includible in Cora's estate. This result could only have been obtained by settlement since the notes were actually part of the B Trust. By virtue of the inclusion of these notes in Cora's estate, the taxable gain portion, amounting to $169,947.15, became income in respect of a decedent (Cora). The amount of estate tax payable with respect to this income was $53,890.96.

For the years 1961, 1962, 1963, and 1964, plaintiff reported capital gains from the receipt of the installments on these notes, but it failed to claim deductions under § 691(c)[1] for the estate tax attributable to such gains because at that time the notes were not a part of Cora's estate, i. e., there was no such deduction available. On August 30, 1967, as a consequence of the settlement of Cora's estate, plaintiff filed claims for refund for those years, in the respective amounts of $7,053.99, $13,946.44, $7,568.10, and $976.13, on the theory that it was entitled to this deduction. With the exception of the claim for 1964, they disclosed on their faces that they were filed more than three years after the due dates of the returns and more than two years after the taxes had been paid. They asserted §§ 1311–1314 to overcome the statute of limitations.

On March 10, 1969, the Commissioner of Internal Revenue advised plaintiff that its claims for refund for 1961, 1962, and 1963 were disallowed in full but that the claim for 1964 was timely filed and would be allowed. Thereafter, plaintiff received a refund for 1964 of $976.13 plus interest of $232.59. On June 3, 1970, plaintiff instituted this suit with respect to 1961, 1962, and 1963.

The first question is whether Sections 1311 through 1314 of the Internal Revenue Code of 1954 apply in favor of the plaintiff so as to mitigate the effect of the statute of limitations which otherwise bars plaintiff's claims. Section 1311(a) reads as follows:

> *General Rule.*—If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, other than this part and other than section 7122 (relating to compromises), then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

Section 1312(5), under which plaintiff seeks relief, provides:

> § 1312. *Circumstances of Adjustment.*
>
> The circumstances under which the adjustment provided in section 1311 is authorized are as follows:
>
> \*　\*　\*　\*　\*　\*
>
> (5) *Correlative deductions and inclusions for trusts or estates and lega-*

*tees, beneficiaries, or heirs.*—The determination allows or disallows any of the additional deductions allowable in computing the taxable income of estates or trusts, or requires or denies any of the inclusions in the computation of taxable income of beneficiaries, heirs, or legatees, specified in subparts A to E, inclusive (secs. 641 and following, relating to estates, trusts and beneficiaries) of part I of subchapter J of this chapter, or corresponding provisions of prior internal revenue laws, and the correlative inclusion or deduction, as the case may be, has been erroneously excluded, omitted, or included, or disallowed, omitted, or allowed, as the case may be, in respect of the related taxpayer.

■ These mitigation provisions are clearly intended to provide relief against inequities caused by the operation of the statute of limitations in certain cases only. They do not apply to all situations. This court in Gooding v. United States, 326 F.2d 988, 990, 164 Ct.Cl. 197, 201 (1964), cert. denied, 379 U.S. 834, 85 S.Ct. 67, 13 L.Ed.2d 42 (1964), stated as follows:

> To pass over the limitations hurdle, the Goodings rely primarily on the mitigation provisions of the 1954 Code (sections 1311–1315) which grant extra-limitations relief to the taxpayer and the Government if and when they suffer from inconsistent treatment of tax matters by the other side. This relief is limited to defined circumstances; the statute "does not purport to permit the correction of all errors and inequities." Brennen v. Commissioner, 20 T.C. 495, 500 (1953). [Footnote omitted.]

In Olin Mathieson Chemical Corp. v. United States, 265 F.2d 293, 296 (7th Cir. 1959), it is stated:

> Of course, Congress did not intend by §§ 1311–1315 to provide relief for inequities in all situations in which just claims are precluded by statutes of limitations. * * *
>
> * * * * * *

In order to obtain relief under §§ 1311–1315 taxpayer must demonstrate that it meets the specific requirements of those sections. Sections 1311–1315, though complicated and technical in their wording, have the clear purpose of providing for adjustments to correct errors *only* under particular circumstances set forth in detail in Section 1312, which adjustment would otherwise not be made due to the "operation of any law or rule of law." Section 1311(a). Moreover, these adjustments are to be allowed only under conditions delineated in Section 1311(b). (Emphasis as in original.)

■ Plaintiff contends that it comes within the circumstance described in § 1312(5), but a careful reading of that provision shows that plaintiff fails to meet its requirements in three ways. First, the statute only applies where "(t)he determination allows or disallows any of the additional deductions allowable in computing the *taxable income* of estates or trusts, or requires or denies any of the inclusions in the computation of *taxable income* of beneficiaries, heirs, or legatees, * * *" (emphasis added). In plaintiff's case, however, the 1967 determination of the Tax Court was an estate tax matter requiring the inclusion of an asset in the gross estate of Cora Evans. A decision in an estate tax matter cannot satisfy the statute. Plaintiff argues that the determination in Cora's estate necessarily created eligibility for the § 691(c) income tax deduction in the same manner as the determination in *Gooding, supra,* was held by this court to have impliedly decided the basis question which made plaintiff Gooding eligible for § 1311 relief. But plaintiff cannot rely on that case because it involved an express determination of Mr. Gooding's income tax liability, which is lacking in the instant case.

■ We also find support for this view in the Treasury Regulations. Section 1.1311(a)–2(b), Treasury Regulations on Income Tax (1954 Code), provides that the areas of application of sections 1311–1314 are limited to cir-

cumstances arising out of income tax determinations:[2]

(b) The determination (including a determination under section 1313(a)(4)) may be with respect to any of the taxes imposed by subtitle A [Income Taxes] of the Internal Revenue Code of 1954, by chapter 1 and subchapters A, B, D, and E of chapter 2 of the Internal Revenue Code of 1939, or by the corresponding provisions of any prior revenue act, or by more than one of such provisions. Section 1311 may be applied to correct the effect of the error only as to the tax or taxes with respect to which the error was made which correspond to the tax or taxes with respect to which the determination relates. Thus, if the determination relates to a tax imposed by chapter 1 of the Internal Revenue Code of 1954, the adjustment may be only with respect to the tax imposed by such chapter or by the corresponding provisions of prior law.

And Treas. Reg. § 1.1312–5 shows by specific examples that § 1312(5) is meant to apply only to errors growing out of distributions by a trust or estate to beneficiaries, heirs, or legatees. Plaintiff's case is in no way similar to this situation.

Secondly, plaintiff is not entitled to statutory relief because § 1312(5) only applies to determinations which involve a deduction or inclusion "specified in subparts A to E, inclusive (secs. 641 and following, relating to estates, trusts and beneficiaries) of part I of subchapter J of [chapter one of the Internal Revenue Code] * * *." The § 691(c) deduction which plaintiff seeks is found in part II of subchapter J. Thus, the revenue code could not be clearer in its prohibition of the relief plaintiff urges upon us.

Thirdly, mitigation of the statute of limitations is allowed under §

1312(5) only if the erroneous treatment has occurred in respect of related taxpayers. The estate of Cora Evans and the plaintiff trust, set up to manage the property of her deceased husband's residuary trusts, are not described in the list of related taxpayers in § 1313(c).

The remaining question is whether the plaintiff may, by invoking the doctrine of equitable recoupment, circumvent the statute of limitations. The fundamental basis of the doctrine is well discussed in Bull v. United States, 295 U.S. 247, 262, 55 S.Ct. 695, 700, 79 L.Ed. 1421 (1935), where it originated:

* * * If the claim for income tax deficiency had been the subject of a suit, any counter demand for recoupment of the overpayment of estate tax could have been asserted by way of defense and credit obtained, notwithstanding the statute of limitations had barred an independent suit against the government therefor. This is because recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely.

See also Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937).

There was language in the *Bull* and *Stone* decisions which indicated that the doctrine of recoupment might thereafter have sweeping and broad effect. But the Supreme Court in Rothensies v. Electric Storage Battery Company, 329 U.S. 296, 300–303, 67 S.Ct. 271, 273–274, 91 L.Ed. 296 (1946), declined for good reasons further expansion of the doctrine in the following language:

The Government has argued that allowance of the claim of recoupment involved here would expand the holding in the *Bull* case. The Circuit Court of Appeals agreed that in the

---

2. The force and effect of this interpretive regulation is demonstrated by section 6521 of the Internal Revenue Code of 1954, which was enacted to allow for the mitigation of the effect of the statute of limitations in cases of related taxes under different chapters.

*Bull* case "The main claim and recoupment claim were more closely connected than they are here." Electric Storage Battery Co. v. Rothensies, 3 Cir., 152 F.2d 521, 524. But the court nevertheless allowed the claim because it considered that this Court had introduced the doctrine of recoupment into tax law and that it was "based on concepts of fairness." 152 F.2d 521, 524. It said it saw no reason for narrowly construing the requirement that both claims originate in the same transaction. We think this misapprehends the limitations on the doctrine of recoupment as applied to tax law and it leads us to state more fully reasons for declining to expand the doctrine beyond the facts of the cited cases.

It probably would be all but intolerable, at least Congress has regarded it as ill-advised, to have an income tax system under which there never would come a day of final settlement and which required both the taxpayer and the Government to stand ready forever and a day to produce vouchers, prove events, establish values and recall details of all that goes into an income tax contest. Hence a statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy.

\* \* \* \* \* \*

If there are to be exceptions to the statute of limitations, it is for Congress rather than for the Courts to create and limit them.

See also McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46 (1937).

This court in Ford v. United States 276 F.2d 17, 23, 149 Ct.Cl. 558, 569 (1960), in following *Rothensies*, stated:

\* \* \* If the doctrine of recoupment were a flexible one, susceptible of expansion, it might well be applied in the instant case. But the teaching of *Rothensies* is that it is not a flexible doctrine, but a doctrine strictly limited, and limited for good reason.

We also refuse to expand the doctrine to this case. The Supreme Court's ruling in *Rothensies* indicates that equitable recoupment is to be limited to those cases presenting facts similar to *Bull*. It will only be allowed as a defense to an asserted claim and only when it grows out of the same transaction. The facts in this case are not at all like *Bull*. In that case, the executor's suit was founded on a timely claim for refund of income tax, paid pursuant to the government's asserted deficiency, on the theory that the tax should be reduced by an earlier overpayment recovery of which was barred by the statute of limitations. In the present case, the plaintiff's claims for refund were not timely. Furthermore, since the Government's asserted deficiency was settled by a determination that no deficiency existed, plaintiff is attempting to use recoupment not in its traditional form as a defense to an asserted deficiency, but as an independent ground for reopening years now closed by the statute of limitations.

On the basis of the foregoing facts and opinion, the court concludes that defendant's motion for summary judgment should be granted and that plaintiff's cross-motion should be denied. Judgment is entered accordingly dismissing plaintiff's petition.