Clifton L. BRIGHAM and Jane
G. Brigham
v.
The UNITED STATES.
Jerome D. GAGE and Shirley K. Gage
v.
The UNITED STATES.

Ralph H. GAGE, Individually, and Ralph
H. Gage and Jerome D. Gage, Executors of the Estate of Nell D. Gage
v.
The UNITED STATES.

Charles F. JARRARD and Margaret B.
Jarrard
v.
The UNITED STATES.
Nos. 281–70, 282–70, 283–70, 284–70.

United States Court of Claims.

Dec. 12, 1972.

Donald A. Statland, Washington, D. C., for plaintiffs; Burton W. Kanter, Chicago, Ill., attorney of record. Calvin Eisenberg and Richard M. Kates, Chicago, Ill., of counsel.

John E. Evans, with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant. Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG, and BENNETT, Judges.

ON DEFENDANT'S MOTION FOR
JUDGMENT ON THE
PLEADINGS

KASHIWA, Judge:

The four suits listed above were consolidated by an order of this court. The suits were brought to recover income taxes and assessed interest for the years

and amounts indicated,[1] plus interest as provided by law. The defendant has moved for judgment on the pleadings. The plaintiffs oppose the motion, raising three separate and distinct issues for our resolution:

(1) Whether the provisions of sections 1311 to 1315 of the Internal Revenue Code of 1954 apply in mitigation of the otherwise applicable statute of limitations on refunds with respect to the taxable years in issue.

(2) Whether, assuming the provisions of the mitigation sections are inapplicable, the taxpayers are entitled to recovery under the doctrine of equitable recoupment.

(3) Whether the examination of certain of the taxpayers' returns for the year 1962 constituted informal claims for refund timely filed on behalf of all the taxpayers for the years 1958 through 1961.

We hold for the defendant in each of the cases for the reasons hereinafter stated.

In 1952 the shareholders of Gage Structural Steel Corporation ("Gage") and Midland Structural Steel Corporation entered into an agreement to sell their shares of stock to Illinois Wesleyan University ("University") on an installment sale basis. All the plaintiffs in this consolidated action were included in this group of shareholders. In 1957 there was a repurchase by the group of shareholders of the stock sold in 1952.

The taxpayers filed federal income tax returns for the calendar years 1958 through 1961 with the District Director of Internal Revenue in Chicago, Illinois. On those returns the taxpayers reported gains from the sales of Gage stock as capital gains. Each of the plaintiffs' tax returns for the years 1958 through 1961 were subsequently examined. The amounts treated by the plaintiffs as capital gains installment sale proceeds were reclassified as ordinary income. The resulting taxes and interest were paid during the period March 1, 1963, to June 4, 1963.

An Internal Revenue agent during the years 1965 and 1966 examined the 1962 federal income tax return of Jerome D. and Shirley K. Gage, two of the taxpayers, and again made the finding that the proceeds from their sale of Gage stock constituted ordinary income. These taxpayers filed a protest to that finding and, for reasons discussed below, received a refund of $941.96. The Commissioner conceded that the proceeds of the installment sale received during 1962 were to be treated as capital gain and not ordinary income.

At approximately the same time, the 1962 federal income tax return of Ralph H. and Nell D. Gage was also examined. Again, the finding was initially made that the proceeds from the sale of their Gage stock constituted ordinary income. After the taxpayers filed a protest to this finding, the Internal Revenue Service informed the taxpayers, by letter of June 27, 1967, that no deficiency would be asserted for the year 1962. The Internal Revenue Service, as in the case of the 1962 year of Jerome and Shirley Gage, had reversed its stance and now conceded that a legitimate sale had occurred and that the proceeds of the sale of the Gage stock were subject to capital gain treatment. The reason for this

---

1. *No. 281–70: Clifton L. and
Jane G. Brigham*
1958: $1,304.63
1959: 2,424.63
1960: 629.43
1961: 2,008.19

*No. 282–70: Jerome D. and
Shirley K. Gage*
1958: $4,356.77
1959: 6,974.58
1960: 1,498.88
1961: 3,276.33

*No. 283–70: Ralph H. and
Nell D. Gage*
1958: $38,150.57
1959: 62,917.55
1960: 5,572.00
1961: 19,932.62

*No. 284–70: Charles F. and
Margaret B. Jarrard*
1958: $34,847.26
1959: 65,547.28
1960: 8,323.08
1961: 18,536.45

changed stance by the Internal Revenue Service is clear.

In April, 1965, the United States Supreme Court decided the case of Commissioner of Internal Revenue v. Brown, 380 U.S. 563, 85 S.Ct. 1162, 14 L.Ed.2d 75 (1965), which approved a transaction similar in nature to that involved in the instant case. In light of the *Brown* opinion, the Commissioner of Internal Revenue published Rev.Rul. 66–153, 1966–1, Cum.Bull. 187.[2] There is no real doubt that the aboutface by the Internal Revenue Service with respect to the 1962 taxable year of Jerome and Shirley Gage and Ralph and Nell Gage was the consequence of the *Brown* decision as interpreted by the Revenue Ruling. Since it was the view of the Service that the *Brown* case was only applicable to cases in which the amount payable by the exempt foundation for the stock of the business is in accord with the fair market value of that stock, we are safe to assume that this was the situation with respect to the 1952 sale.

On June 17, 1968, within one year after the refund was granted to Jerome and Shirley Gage (and within one year after the above-described letter was sent to Ralph and the Estate of Nell Gage),

all four groups of taxpayers filed claims for refund for the years 1958, 1959, 1960, and 1961 to recover the amounts of additional taxes and interest which they had paid. All of these claims were based on the treatment of the monies the taxpayers had received from their sales of Gage stock. All the claims were disallowed. The claims of Clifton L. and Jane G. Brigham were disallowed on December 9, 1968; and the claims of all the other taxpayers were disallowed on August 19, 1968. The taxpayers assert that they are entitled to recover the amounts which are specified in the aforementioned claims for refund, together with interest thereon, based upon the correct tax treatment of the Gage stock sale proceeds for the taxable years 1958 through 1961.

1. *Statutory Mitigation of the Statute of Limitations, Sections 1311 through 1315 of the Internal Revenue Code of 1954.*[3]

Plaintiffs' chief argument is that the Internal Revenue Service's action with respect to certain of the taxpayers' income taxes for the taxable year 1962 were inconsistent determinations within the meaning of section 1313(a). These inconsistent determinations entitle each

---

2. Based on Technical Information Release 768, Int.Rev.Serv. T.I.R. No. 768 (October 5, 1965).

3. The pertinent portions of these sections provide as follows:

§ 1311. Correction of error.

(a) General rule.—If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, other than this part and other than section 7122 (relating to compromises), then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

(b) Conditions necessary for adjustment.—

(1) Maintenance of an inconsistent position.— * * * an adjustment shall be made under this part only if—

(A) in case the amount of the adjustment would be credited or refunded

* * *, there is adopted in the determination a position maintained by the Secretary or his delegate, * * *

and the position maintained by the Secretary or his delegate * * * is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.

*      *      *      *      *

§ 1312. Circumstances of adjustment

The circumstances under which the adjustment provided in section 1311 is authorized are as follows:

*      *      *      *      *

(7) Basis of property after erroneous treatment of a prior transaction.—

*      *      *      *      *

§ 1313. Definitions

(a) Determination.—For purposes of this part, the term "determination" means—

*      *      *      *      *

(3) a final disposition by the Secretary or his delegate of a claim for refund. * * *

of the four groups of plaintiffs to reopen years otherwise barred by the relevant statutory period of limitations contained in section 6511.

Sections 1311 through 1315, commonly referred to as the "mitigation sections," require the following:

1) a determination
2) which adopts a position maintained by (in this case) the Commissioner (In the present case, since the Commissioner is the beneficiary of the statutory bar, it is his maintenance of the inconsistent position which must be shown. Section 1311(b)(1)(A) above quoted.);
3) and that position is inconsistent with the prior treatment of the item in question;
4) which brings about an unfair result described in one of the paragraphs of section 1312.

A. *Jerome D. Gage and Shirley K. Gage* (No. 282–70)

The parties have assumed that the following prerequisites to relief under the mitigation provisions have been fulfilled: (1) a "determination" within the meaning of section 1313 has been made; (2) the position adopted by the determination is inconsistent with the erroneous tax treatment of the transaction in a previous taxable year; and (3) the determination is described in section 1312(7) of the Internal Revenue Code of 1954.

■ The crucial issue is whether the Commissioner of Internal Revenue has *actively maintained* a position with regard to the 1962 determination which is inconsistent with the erroneous inclusion or recognition. The requirement of the *maintenance* of the inconsistent position is basic to the existence of the statutory mitigation provisions. The legislative history of the predecessor section to section 1311 is unambiguous:

(1) To preserve unimpaired the essential function of the statute of limitations, corrective adjustments should (a) never modify the application of the statute except when the party or par-

ties in whose favor it applies shall have justified such modification by active inconsistency * * *. [S. Rep. No. 1567, 75th Cong. 3d Sess. 49 (1938).]

Since the Commissioner, in the instant case, is the beneficiary of the statute of limitations, it is his maintenance of the inconsistent position which must be shown. Otherwise, the mitigation provisions will not permit the taxpayers to "awaken the sleeping dog." Maguire, Surrey, and Traynor, Section 820 of the Revenue Act of 1938, 48 Yale L.J. 719, 735 (1939).

■ Our decision in Heineman v. United States, 391 F.2d 648, 183 Ct.Cl. 17 (1968), controls the instant case. In *Heineman*, the taxpayer's decedent had viewed, for the years 1944 through 1946 and 1948 through 1952, the cash distributions made with respect to his common stock as nontaxable distributions in liquidation. Upon audit, it was determined that the distributions were in fact dividends. Deficiencies and interest were accordingly assessed and paid. Subsequently, the case of Maguire v. Commissioner of Internal Revenue, 222 F.2d 472 (7th Cir.1955), was decided, which held that the same company was, in fact, in partial liquidation. The distributions, therefore, were not subject to ordinary income tax. Although the Commissioner allowed the decedent Heineman a refund for 1954, the claims for the years enumerated above were denied by virtue of the statute of limitations, the predecessor of section 6511(a) of the Internal Revenue Code of 1954. In response to the plaintiffs' argument that the Commissioner's allowance of the 1954 refund claim constituted the maintenance by the Commissioner of a position inconsistent with the position taken in prior years with respect to the distributions of the corporation, this court held:

* * * This contention misconstrues the nature of the inconsistent position requirement of section 1311 (b)(1). One does not "maintain" a position, in the ordinary sense of that phrase, merely by accepting a contention or position originated and ac-

tively asserted by an opposing party. In order for section 1311(b)(1) to apply, defendant, as the party relying upon the bar of the statute of limitations, must be the *active* party in maintaining the position, not merely a passive party acceding to a position actively maintained by taxpayers. * * *

* * * * * *

This interpretation of the inconsistent position requirement is in full accord with the recognized purpose of the mitigation provisions. The Senate Report amply demonstrates that the mitigation provisions were enacted primarily to prevent either the Commissioner or the taxpayer from gaining the advantage of double taxation or double tax avoidance by the offensive use of the statute of limitations. * * * [391 F.2d 651–652, 183 Ct. Cl. 22, 23–24]

The plaintiffs argue that the factual pattern in their cases is more nearly the equivalent of Moultrie Cotton Mills v. United States, 151 F.Supp. 482, 138 Ct. Cl. 208 (1957). In *Moultrie*, the taxpayer was required by Treasury Department regulation to recompute its inventories for the years 1941 through 1947. This was the result of a change in inventory method for a later year. The result of this computation was that, aside from the statute of limitations, there would be a deficiency adjustment for 1947 and overpayments for 1941 through 1946. The Commissioner relied on the statute of limitations in his refusal to refund the overpayments for 1941, 1942, and 1944.[4] In refusing to acknowledge the applicability of the predecessor sections to sections 1311 through 1315, the Commissioner contended, *inter alia,* that there had been no inconsistent position maintained by the Commissioner. But the court disagreed and held that:

* * * the allowance in 1954 of plaintiff's claims for refund for 1943, 1945 and 1946, based on the *required* inventory recomputation, is a deter- mination by the Commissioner inconsistent with the prior (1953) denial of plaintiff's claims for refund for the years 1941, 1942 and 1944 which were based on the same *required* recomputation. [151 F.Supp. 485, 138 Ct.Cl. 214.] [Emphasis added.]

The current view of the *Moultrie* decision was expressed by this court in the *Heineman* case, where, in distinguishing *Moultrie,* we said:

Despite the broad language used in *Moultrie,* that case is distinguishable on its facts and should be limited to its facts. For, in *Moultrie,* it was the *Government's Own Regulations* which required the taxpayer to go back and recompute its inventories for the years 1941 through 1947. * * * Thus, *Moultrie* stands for the proposition that allowance of a refund in open years is a position maintained by the Commissioner inconsistent with the refusal to allow a refund for closed years only in the narrow type of situation existing in that case. Obviously, no such situation exists in the instant case. [391 F.2d 653, 183 Ct.Cl. 26.]

It remains for the plaintiffs to establish that Revenue Ruling 66–153 is analogous to the Treasury Regulation in *Moultrie.* This plaintiffs are unable to do. The Revenue Ruling was, in effect, an acquiescence with the *Brown* decision of the United States Supreme Court. At the very most, the Ruling was an attempt by the Internal Revenue Service to interpret that decision in the most limited way, i. e., as applying only to sales of stock at fair market value. The crucial point is that this Ruling did not *require* any activity. The function of the ruling was acquiescence, not command. Plaintiffs are in the identical position of the plaintiff in the *Heineman* case: Upon hearing of a favorable court decision, applications for refund were made. The Commissioner has not attempted to exploit the statute of limitations by adopting an inconsistent stance for an open year. The Commissioner, to the

---

4. 1943 was open due to the filing of consents.

contrary, has merely acceded to the plaintiffs' demand for the open year.

Both the taxpayers and the Government neglected to mention two Fifth Circuit cases until oral argument. Both United States v. Rachal, 312 F.2d 376 (1962) and Gant v. United States, 441 F.2d 1130 (1971), were decided for the taxpayers. But these cases are distinguishable. In the factual pattern before us, adjustments for one year do not have a consequential effect on other years, as is the case with inventory adjustments or fiscal year adjustments.[5] The situation before us is as in *Heineman*. After a change in the interpretation of the law, the taxpayers are attempting to reopen closed years, asserting that the distributions for those closed years were taxed under an incorrect rate structure.

**B. *Ralph H. Gage and Estate of Nell D. Gage* (No. 283–70)**

Plaintiffs' petition did not allege that an audit took place with regard to this set of taxpayers nor did the petition allege that the Internal Revenue Service had written the taxpayers that no deficiency would be asserted. On oral argument before this court, counsel for the Government conceded, for purposes of its motion, that a determination was made with respect to these taxpayers. The Government's argument is thus the same argument made with respect to Jerome D. and Shirley K. Gage: That there has been no maintenance of an inconsistent position by the Commissioner of Internal Revenue. For the reasons previously stated, we agree with the Government.

**C. *Clifton L. Brigham and Jane G. Brigham*[6] (No. 281–70); and D. *Charles***

**F. *Jarrard and Margaret B. Jarrard* (No. 284–70)**

The case for statutory mitigation for these two sets of taxpayers is even weaker. Although the case may be disposed of on the ground that the Commissioner of Internal Revenue has not maintained an inconsistent position, these plaintiffs have, in addition, failed to satisfy the requirement that a determination be made with respect to them or a related party.

It is clear that a direct determination has not been made with respect to the Brighams or the Jarrards. To remedy this situation, the taxpayers first argue that they are related taxpayers within the meaning of section 1313(c)(6), i. e., that they as well as the Gages were all "partners"[7] in the joint venture of selling the Gage stock to the University.

Since the parties have agreed, for purposes of this motion, that section 1312 (7) provides the only possible circumstance of adjustment, we need not reach the question of whether a partnership exists among the four groups of taxpayers. Section 1312(7) provides, in effect, its own definition of "related taxpayers" and does not incorporate into its definition the various relationships specified in section 1313(c).[8]

The Brighams and the Jarrards simply do not satisfy the clear language of either section 1312(7)(B)(ii) or (iii):

(ii) a taxpayer who acquired title to the property in the transaction and from whom, mediately or immediately, the taxpayer with respect to whom the determination is made derived title, or

(iii) a taxpayer who had title to the property at the time of the transaction and from whom, mediately or immedi-

---

5. But see Glatt v. United States, Ct.Cl., 470 F.2d 596, decided this day, for a decision that not all cases dealing with inventory adjustments are subject to the mitigation provisions of sections 1311 through 1315. Inventory cases are also subject to the prerequisite that the party relying on the statute of limitations must be the one who has maintained the inconsistent position. With respect to this

prerequisite, our decision in *Glatt* distinguishes *Rachal* and does not follow *Gant*.

6. Although these plaintiffs' names are spelled "Bringham" in their original petition, this was evidently a misprint.

7. Shareholders are not listed in § 1313(c) as "related parties."

8. Treas.Reg. § 1.1313(c)–1(1972).

ately, the taxpayer with respect to whom the determination is made derived title, if the basis of the property in the hands of the taxpayer with respect to whom the determination is made is determined under section 1015(a) (relating to the basis of property acquired by gift).

It is simply not the case that the Gages (with respect to whom a determination was made) in any way derived title from or through the Brighams or the Jarrards.

## 2. *Equitable Recoupment*

The four groups of taxpayers contend that if the mitigation provisions do not provide relief, then they may avail themselves of the judicial doctrine of equitable recoupment.

As stated above, the Government, for purposes of this motion, has not contested plaintiffs' assertion in the various petitions that the circumstance of adjustment is a basis adjustment under section 1312(7).[9] The plaintiffs' failure to prevail under the mitigation provisions is thus not traceable to any failure in establishing that they are within a category of adjustment. Rather, the Government has established that the Commissioner of Internal Revenue did not maintain an inconsistent position.

This court has held that within the defined areas to which the mitigation provisions are addressed, i. e., 1312(1) through 1312(7), the statutory remedy is exclusive:

> * * * When Congress established the detailed provisions of the mitigation sections it intended, we think, that they supersede any common-law recoupment remedies with respect to the categories designated in section 1312 * * *. [Gooding v.

United States, 326 F.2d 995–996, 164 Ct.Cl. 210.[10]

■■ Even assuming that the taxpayers were not within the literal language of section 1312(7), the plaintiffs still misapprehend the historical function of the recoupment remedy in the tax law. When its benefits are sought by the taxpayer, the function of the doctrine is to allow the taxpayer to *reduce* the amount of a deficiency recoverable by the Government by the amount of an otherwise barred overpayment of the taxpayer. In Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935), an executor's suit was founded on a timely claim for refund, paid pursuant to the Government's asserted deficiency, on the theory that the tax should be reduced by an earlier overpayment, recovery of which was barred by the statute of limitations. Here no such situation exists. The taxpayers are not seeking to reduce deficiencies in later years. The Government concedes that no such deficiencies exist. Rather, the plaintiffs are attempting an extension of the doctrine of equitable recoupment to the case of a refund of taxes for an otherwise barred year.

In both the *Bull* case and Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937),

> * * * The single transaction or taxable event had been subjected to two taxes on inconsistent legal theories, and what was mistakenly paid was recouped against what was correctly due. * * * [Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 300, 67 S.Ct. 271, 272, 91 L.Ed. 296 (1946).]

Under the facts of the case before us, the plaintiffs have paid a tax under ordi-

---

9. Evidently plaintiffs proceed on the assumption that the determination with respect to the Gages "implicitly" determined basis. See Gooding v. United States, 326 F.2d 988, 164 Ct.Cl. 197, cert. denied 379 U.S. 834, 85 S.Ct. 67, 13 L.Ed. 2d 42 (1964). Since the issue of the appli-

cability of section 1312(7) was not contested by the Government, we express no opinion, but treat the determination as within the category described in section 1312(7).

10. See also Benenson v. United States, 385 F.2d 26, 32 fn. 8 (2nd Cir. 1967).

nary income rates on installments received in earlier years; then a tax under capital gains rates for installments received in later years. The Supreme Court in Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 300–303, 67 S.Ct. 271, 273 (1946), declined to extend the doctrine:

> The Government has argued that allowance of the claim of recoupment involved here would expand the holding in the *Bull* case. The Circuit Court of Appeals agreed that in the *Bull* case "The main claim and recoupment claim were more closely connected than they are here." Electric Storage Battery Co. v. Rothensies, 3 Cir., 152 F.2d 521, 524. But the court nevertheless allowed the claim because it considered that this Court had introduced the doctrine of recoupment into tax law and that it was "based on concepts of fairness," 152 F.2d 521, 524. It said it saw no reason for narrowly construing the requirement that both claims originate in the same transaction. We think this misapprehends the limitations on the doctrine of recoupment as applied to tax law and it leads us to state more fully reasons for declining to expand the doctrine beyond the facts of the cited cases.

> It probably would be all but intolerable, at least Congress has regarded it as ill-advised, to have an income tax system under which there never would come a day of final settlement and which required both the taxpayer and the Government to stand ready forever and a day to produce vouchers, prove events, establish values and recall details of all that goes into an income tax contest. Hence, a statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy.

> \*     \*     \*     \*     \*     \*

> \*   \*   \* If there are to be exceptions to the statute of limitations, it is for Congress rather than for the courts to create and limit them.[11]

This court in Ford v. United States, 276 F.2d 17, 23, 149 Ct.Cl. 558, 569 (1960), in following *Rothensies*, stated:

> \*   \*   \* If the doctrine of recoupment were a flexible one, susceptible of expansion, it might well be applied in the instant case. But the teaching of *Rothensies* is that it is not a flexible doctrine, but a doctrine strictly limited, and limited for good reason.

This court has even more recently had occasion to reexamine its position. In Arthur E. Evans Trust v. United States, 462 F.2d 521, 199 Ct.Cl. —— (1972), we again declined to expand the doctrine beyond its original bounds.

### 3. *Informal Claims for Refund*

As stated above, the 1962 return of Jerome D. and Shirley K. Gage as well as the 1962 return of Ralph H. and Nell D. Gage were examined in 1965 and 1966. It is the position of the plaintiffs that inherent in the grant of a refund to Jerome and Shirley Gage and in the decision not to assert a deficiency against Ralph and Nell Gage is an acknowledgment of the existence of informal claims for refund by *all* the taxpayers for the years 1958 through 1961.[12]

---

11. See also McEachern v. Rose, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46 (1937).

12. It is clear that the filing of an informal claim for refund would have to occur within two years from the time the tax was paid. Section 6511(a), I.R.C. of 1954. The payment dates for the 1958 through 1961 liabilities were as follows: No. 281–70: April 25, 1963 to May 25, 1963; No. 282–70: April 29, 1963: No. 283–70: March 1, 1963 and June 4, 1963; No. 284–70: March 1, 1963 and March 25, 1963. Thus, if the grant of a refund for 1962 to Jerome and Shirley Gage in 1966 or the letter to Ralph and the Estate of Nell Gage in 1967 informing them that no deficiency would be asserted for 1962 were to be deemed informal claims for refund, they would not be timely. Plaintiffs must therefore be contending that the events at the initiation of an audit for the taxable year 1962 in 1965 with regard to Jerome and Shirley Gage constituted an informal claim for refund. Since we hold against the plaintiffs, we need not reach the factual question whether the audit for 1962 was initiated within two years of the various payment dates.

Informal claims for refund have been recognized when, at a minimum, a showing has been made that the purposes of a formal claim for refund have been fulfilled. See United States v. Kales, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132 (1941). In Newton v. United States, 163 F.Supp. 614, 619, 143 Ct.Cl. 293, 300, (1958), this court outlined the critical requirement for a valid informal claim for refund:

> * * * The basic underlying principle is the necessity to put the Commissioner on notice of what the taxpayer is claiming and that he is in fact making a claim for refund. * *

Plaintiffs Jerome and Shirley Gage did not transmit any written document to the Internal Revenue Service protesting the taxes collected for the years 1958 through 1961. It certainly cannot be presumed that the Commissioner of Internal Revenue is on notice of the filing of informal claims for refund for prior years (the taxes and interest on which having been collected some two years before) merely by auditing a return for a later year involving the same issue. We do not state here the rule as to what will amount to a sufficient showing of an informal claim for refund. Each case will undoubtedly present its own curious blend of facts and circumstances. We do hold that, as a matter of law, the Commissioner cannot be deemed to have received an informal claim for refund for earlier years by the mere fact of auditing the taxpayers' return of a later year involving the same issue.[13]

The identical situation applies with respect to the audit of the 1962 return of Ralph H. and Nell D. Gage.[14] Insofar as Clifton L. and Jane G. Brigham as well as Charles F. and Margaret B. Jarrard are concerned, an even weaker case is presented. These taxpayers were not even audited for 1962. To argue, as do these particular plaintiffs, that informal claims for refund were filed on their behalf for the years 1958 through 1961 by virtue of the audit for the year 1962 of another shareholder in the Gage corporation leads us even further afield. Their cases being even more tenuous than that of Jerome and Shirley Gage, none of the other plaintiffs may prevail on the theory of informal claims for refund.

For the foregoing reasons, defendant's motion for judgment on the pleadings is granted and the petitions are dismissed.

---

13. See American Radiator & Standard Sanitary Corp. v. United States, 318 F.2d 915, 920, 162 Ct.Cl. 106, 113–114 (1963), where we said:

"* * * Informal refund claims have long been held valid * * *. But they must have a written component (Sicanoff Vegetable Oil Corp. v. United States, 181 F.Supp. 265, 149 Ct.Cl. 278, 286 (1960) ;) * * *, and should adequately apprise the Internal Revenue Service that a refund is sought and for certain years. * * * It is not enough that the Service have in its possession information from which it

might deduce that the taxpayer is entitled to, or might desire, a refund; nor is it sufficient that a claim involving the same ground has been filed for another year or by a different taxpayer. Rosengarten v. United States, * * * [181 F.Supp. 275, 149 Ct.Cl. 287 (1960), cert. denied, 364 U.S. 822, 81 S.Ct. 60, 5 L.Ed.2d 53]."

14. Petitioners' allegations are even more unclear with respect to when the audit for the 1962 years was commenced. Again, we do not need to reach this factual question.