Mary Pauline McKenney JOYCE, Aloysius G. Casey and Gerard A. McDonough, Executrix and Executors Under the Will of M. Pauline Casey, Deceased,

v.

UNITED STATES of America, Appellant.

No. 15340.

United States Court of Appeals Third Circuit.

Argued Nov. 30, 1965.

Decided May 4, 1966.

Rehearing Denied May 25, 1966.

Richard J. Heiman, Dept. of Justice, Tax Div., Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Washington, D. C., Bernard J. Brown, U. S. Atty., of counsel, on the brief), for appellant.

Laurence F. Casey, New York City (Brown, Wood, Fuller, Caldwell & Ivey, New York City, Jerome P. Casey, Scranton, Pa., of counsel, on the brief), for appellees.

Before HASTIE, GANEY and FREEDMAN, Circuit Judges.

HASTIE, Circuit Judge.

The United States has taken this appeal from a decision of the District Court for the Middle District of Pennsylvania, 237 F.Supp. 163, which allowed a claim filed by the taxpayer, Pauline Casey,[1] for an income tax adjustment and refund for the closed year 1946 by reason of an alleged overpayment of taxes at that time. Despite the running of the statute of limitations, this overpayment is said to have become recoverable under the provisions of sections 1311 to 1315, inclusive, of the Internal Revenue Code, as a result of an "inconsistent" determination in a subsequent year. The essential facts were stipulated in the district court and decision was rendered on the plaintiff's motion for summary judgment.

In 1946, the A. J. Casey Trust and the P. J. Casey Trust were engaged as partners in the business of renting real estate owned by the partnership. The taxpayer was the sole beneficiary of the A. J. Casey Trust and as such was required to pay income tax on the distributable income of that trust, which was one half of the distributive net income of the partnership. During 1946, the partnership sustained a loss on the sale of certain improved real property it had been using to produce rental income. In the partnership informational income tax return, distributive net income was computed without any deduction on account of this loss. The partner, A. J. Casey Trust, then accepted and used one half of the partnership net income figure thus calculated as its income for 1946. And finally, the taxpayer, to whom the entire 1946 net income of the trust was distributable and taxable, returned as her income the entire amount of the net income of the trust as thus

---

1. The taxpayer died after the filing of this suit and her executors have been substituted as plaintiffs.

determined. The loss sustained through the 1946 sale of partnership real property was not reflected in any way in the taxpayer's calculation and payment of her 1946 income tax, though a partnership balance sheet, which was part of the partnership's income tax return, showed this loss as reducing the "capital account" of the partner, A. J. Casey Trust.

In 1955 the partnership was terminated. For tax purposes the A. J. Casey Trust determined a basis for its interest in the partnership without taking into account the 1946 sale of real property or the consequent loss of $19,670.09. However, the Internal Revenue Service and subsequently the Tax Court, in determining the tax liabilities of both the Trust and the taxpayer, decreased the basis of the Trust's interest in the partnership by $19,670.09.[2] In the case of the taxpayer, this reduced the depreciation deduction allocable to her as beneficiary, under section 167(g) of the Internal Revenue Code of 1954, and resulted in a determination increasing her income tax proportionately. M. Pauline Casey, 1962, 38 T.C. 357. It is to recover a corresponding refund for 1946, through reducing the taxpayer's income for that year by $19,670.09 that the present claim has been made.

It is the basic position of the appellant that nothing is refundable because no error has been shown to have been made in the computation or payment of the taxpayer's 1946 income tax. To determine whether this contention is sound we must consider, relate and apply rules and principles of taxation of partnership income and trust income which are relevant to this unusual situation.

■ The government begins with the contention that partnership ordinary net income was properly computed and reported in 1946, while the taxpayer says that such income was incorrectly returned and should have been reduced by the amount of the loss on the sale of real estate. This disagreement turns on the question whether the loss was a loss on the sale of capital assets or an ordinary loss. Section 183 of the 1939 Internal Revenue Code, as applicable to the 1946 partnership return, provides that partnership "ordinary net income" shall be computed "[a]fter excluding all items of gain and loss from sales or exchanges of capital assets". In applying this provision it is necessary to take into account section 117(j)(2) of the 1939 Internal Revenue Code which states a "general rule", applicable but not peculiar to partnership situations, that an excess of losses on sales of "property used in the trade or business" over gains on such sales "shall not be considered as * * * losses from sales * * * of capital assets. * * *" Applying this general rule to the present problem of computing 1946 partnership net income under section 183, the taxpayer contends that the loss suffered by the partnership on the sale of real estate (no offsetting gains appearing in partnership or individual transactions) should have been treated as an ordinary loss in the computation of the ordinary net income of the partnership. We think this reasoning is correct. Cf. Jay Burns, 1954, 21 T.C. 857, 869–70; Graves Bros. Co., 1952, 17 T.C. 1499, 1500, 1506. Thus, the ordinary net income of the partnership for 1946 was in fact and law about $39,000 less than the sum computed and returned.

■■ By the same token, each partner's taxable share of partnership income was similarly overstated by about $19,000 in the partner's own return, since section 182 of the 1939 Internal Revenue Code specifies that in computing his net income, a partner shall include "[h]is distributive share of the ordinary net income or the ordinary net loss of the partnership, computed as provided in section 183(b)". If this section had been properly applied to the partnership transactions of 1946, the

---

**2.** Section 705(a)(2) of the 1954 Internal Revenue Code requires that "[t]he adjusted basis of a partner's interest * * * shall * * * be * * *

(2) decreased * * * by * * * his distributive share * * * of—(A) losses of the partnership * * *."

loss of the sale of real property used in the partnership business would have been used as a deduction in determining each partner's distributive share in the ordinary net income of the partnership.[3] Thus, the 1946 income of the A. J. Casey Trust from the partnership was some $19,000 less than the amount reported in its tax return and distributed to the taxpayer, and in turn reported by her as taxable income. In legal contemplation, this distribution of $19,000 can be viewed only as a partial liquidation of the capital interest of the Trust in the partnership and not as any realization of income by the Trust which could be taxable to the beneficiary.

Thus viewed, the situation of the beneficiary is analogous to that of the beneficiaries in Dovey v. United States, 3d Cir., 1958, 254 F.2d 538, who received a distribution, purportedly of income which, under the Internal Revenue Code, was not income realized by the Trust. We held that this distribution did not constitute taxable income of the beneficiary. Also pertinent is the following observation of the Supreme Court in Freuler v. Helvering, 1934, 291 U.S. 35, 42, 54 S.Ct. 308, 311, 78 L.Ed. 634, with reference to taxation of trust beneficiaries under an earlier statute:

> "Clearly an overpayment to a beneficiary by mistake of law or fact, would render him liable for the taxable year under consideration, not on the amount paid, but on that payable. If the trustee should have deducted a sum for depreciation from the year's gross income before ascertaining the amount distributable to Mrs. Whitcomb and the other beneficiaries, but failed to do so, he paid her more than was properly distributable for the taxable year."

In sum, an erroneous inclusion of approximately $19,000 in the gross income reported by the taxpayer resulted in an overpayment of her income tax for 1946.

The remaining question is whether an adjustment can now properly be made with reference to the closed year 1946 under the remedial provisions of section 1311–1315 of the 1954 Internal Revenue Code. The government has argued that no "circumstance of adjustment" as required in section 1312, is present in this case and that the position maintained by the Commissioner in a subsequent year was not "inconsistent" with any "error"[4] in the closed year as required by section 1311(b) (1) if relief is to be given.

The "circumstances of adjustment" issue requires only brief comment. The determination made with reference to the taxpayer's 1956 tax liability disclosed a combination of "circumstances under which * * * adjustment * * * is authorized", as set out in section 1312(7) (A) and (C) (i). Admittedly that determination "determine[d] the basis of property". It is equally clear that the 1946 sale of partnership property was a "transaction on which such basis depend[ed]." And finally, a failure to take a deduction for that transaction in 1946 resulted in "an erroneous inclusion in * * * gross income" of the taxpayer.

Greater difficulty is presented by the requirement of section 1311(b) (1) (B) that "the position maintained" in the subsequent determination be "inconsistent with the erroneous inclusion" in income which occurred in an earlier year. More particularly, it must be decided whether "the position maintained" by the Commissioner and the Tax Court in the determination of an adjusted basis for each partner's interest in the partnership, with resultant decrease in the taxpayer's depreciation allowance and increase in her tax for 1956, was "incon-

---

3. There is no problem here of netting gains from sales of individually owned property and the individual's share of losses sustained on sales of partnership property. Contrast Commissioner of In-

ternal Revenue v. Ammann, 5th Cir. 1956, 228 F.2d 417.

4. We have already disposed of the government's argument that the determination made in 1946 was not in error.

sistent with the erroneous inclusion" of $19,000 in the taxpayer's gross income for 1946.

The overstatement of the taxpayer's income in 1946 resulted from a failure to treat a loss on a sale of real property used in partnership business as deductible from partnership earnings in determining partnership ordinary net income. At the same time, however, a partnership balance sheet, one of the schedules included in the 1946 partnership return, showed that during the year each partner's "capital account" had been reduced by about $31,000. This figure was the sum of the partner's share of those proceeds of the sale in question, which were in fact distributed to it, and the loss on the sale, with which we are now concerned. Thus, the 1946 treatment of the loss took into account its impact on the capital interest of each partner in the partnership but failed to recognize its other and quite separate aspect as an allowable deduction from partnership gross income.

The subsequent determination with reference to the tax consequences of the 1946 sale came after the termination of the partnership in 1955 and the consequent distribution of partnership property. In computing the depreciation allowable to each partner it became necessary to determine and adjust the basis of his capital interest in the partnership in the light of acquisitions and dispositions during the existence of the partnership. Accordingly, the original basis was adjusted by an appropriate reduction on account of the 1946 sale. And that reduction included the amount of the loss on the sale.

Thus, the loss which in 1946 was treated as reducing the dollar value of the capital interest of each partner in the partnership was subsequently accorded the concomitant effect of reducing the basis of his interest upon which depreciation would thereafter be allowable. The propriety of this subsequent treatment of the 1946 loss did not depend in any way upon whether that loss was either deducted in fact or deductible in law from gross income in the computation of partnership ordinary net income for 1946. Such a deduction was authorized by section 117(j) (2), a provision discussed earlier in this opinion, which neither sanctioned nor disapproved the use of the loss in adjusting the basis of a partner's interest in the partnership. Indeed, section 117(j) (2) had nothing whatever to do with any determination of the basis of property. Thus, the determination of basis would have been the same in this case whether the loss deduction had been taken or not, and whether such treatment of the loss was proper or not.

■ When the matter is thus analyzed, we think it cannot be held that the use of the 1946 loss in the subsequent adjustment of basis was logically inconsistent with the erroneous failure to use that loss in reducing ordinary net income for 1946. For this reason, we conclude that the inconsistency of position which, under the terms of section 1311, must appear before an error in a closed year can be corrected is not present in this case.

FREEDMAN, Circuit Judge, concurs in the result, being of the view that there was no overpayment of taxes for the year 1946 because the trust income was $60,000 and the loss was not deductible by the taxpayer, but agrees that if there had been an overpayment there was no "inconsistent" determination in a subsequent year as required by section 1311 (b) (1).

The judgment will be reversed.