**FIRST NATIONAL BANK OF OMAHA and Katherine D. Clark, Trustees of the Margaret H. Doorly Family Trusts, Appellees,**

v.

**UNITED STATES of America, Appellant.**

**No. 76–2111.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 1, 1977.

Decided Nov. 11, 1977.

---

Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews, Leonard J. Henzke, Jr., Francis J. Gould (argued and made rebut-

tal), Attys., Tax Div., Dept. of Justice, Washington, D. C. and Daniel E. Wherry, U. S. Atty., Omaha, Neb., on appendix and briefs, for appellant.

Louis E. Lipp, White, Lipp, Simon & Powers (argued), and James R. Place, Omaha, Neb., on brief, for appellees.

Before GIBSON, Chief Judge, HEANEY, Circuit Judge and DEVITT, District Judge.*

GIBSON, Chief Judge.

This is a tax refund suit by trustees of a family trust as successors to the property of the late Margaret H. Doorly, for 1963 income taxes overpaid by Mrs. Doorly. In her 1963 return she recognized the receipt of $10,429,005 from the liquidation of the World Publishing Company (World), publishers of the Omaha World Herald, and paid a tax of $2,332,257.19. It is now conceded that over $1,000,000 should not have been recognized as constructively received for income tax purposes and that she overpaid her taxes for that year in the amount of $267,771.75. The statute of limitations would normally bar this refund suit. The District Court held that the bar is avoided by application of the mitigation provisions of I.R.C. §§ 1311–1314[1] and granted judg-

---

* The Honorable Edward J. Devitt, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

1. Sections 1311–1313 provide in pertinent part:
 § 1311. Correction of error.
 (a) General rule.—If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, other than this part and other than section 7122 (relating to compromises), then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.
 (b) Conditions necessary for adjustment.— (1) Maintenance of an inconsistent position.— * * * [A]djustment shall be made under this part only if—(A) in case the amount of the adjustment would be credited or refunded in the same manner as an overpayment under section 1314, there is adopted

in the determination a position maintained by the Secretary or his delegate, * * * and the position maintained by the Secretary or his delegate * * * is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.
 * * * * * *
 § 1312. Circumstances of adjustment.
 The circumstances under which the adjustment provided in section 1311 is authorized are as follows: (1) Double inclusion of an item of gross income.—The determination requires the inclusion in gross income of an item which was erroneously included in the gross income of the taxpayer for another taxable year or in the gross income of a related taxpayer.
 * * * * * *
 § 1313. Definitions.
 * * * * * *
 (b) Taxpayer.—Notwithstanding section 7701(a)(14), the term "taxpayer" means any person subject to a tax under the applicable revenue law.

ment for the entire $267,771.75 overpayment plus interest. The Government appeals and argues that the mitigation provisions do not apply and that if they do, the refund was improperly calculated. We affirm in part, reverse in part, and remand.

*Factual background*

Prior to January 1963, Margaret Doorly owned 23,973 shares of World stock outright and was the remainder beneficiary of the Gilbert M. Hitchcock Trust which owned 32,400 shares. The shareholders of World had, on October 31, 1962, adopted a plan of complete liquidation under § 337 of the Internal Revenue Code.[2]

On December 28, 1962, World was sued for a substantial commission allegedly due a New York broker arising from efforts to sell the newspaper. In order to meet this potential liability and other contingencies, the Board of Directors resolved on January 3, 1963, to retain a fund of four million dollars amounting to $19 per share until all claims were settled. The Board also resolved to pay a liquidating distribution of $166 per share on January 7, 1963.

Under that distribution the Gilbert M. Hitchcock Trust received $5,378,400. In February 1963, the life income beneficiary of that trust died. The corpus of that trust, including 32,400 shares of World, was delivered in August 1963 to the remainderman, Margaret H. Doorly. She immediately transferred those assets by gift to the irrevocable "Margaret H. Doorly Family Trust" of which plaintiffs are trustees. Mrs. Doorly filed a gift tax return listing the value of the remaining proceeds from the 32,400 shares at $17 per share.

Also in the January 7, 1963, distribution, Margaret Doorly received $3,979,518 on the stock she owned in her own name. On her income tax return for the calendar year 1963, Margaret H. Doorly recognized the receipt of $185 per share ($166 actually received plus $19 retained to meet contingent liabilities) on 56,373 World shares held in her name during 1963 (32,400 from the Hitchcock trust and 23,973 in her own right). She reported a capital gain of $10,-429,005 from the liquidation and paid a tax of $2,332,257.19, of which $267,771.75 represented the tax on the $19 per share retained by the Board of Directors to meet potential liabilities.

At that time both the taxpayer and the Government thought the retained $19 per share was required to be reported and taxed as constructively received in 1963. The Government continued to contend that the 1963 tax was proper until it filed its brief in this appeal, at which time it conceded that under Nebraska law the reserve should not have been taxed until actually distributed.[3]

---

(c) Related taxpayer.—For purposes of this part, the term "related taxpayer" means a taxpayer who, with the taxpayer with respect to whom a determination is made, stood, in the taxable year with respect to which the erroneous inclusion, exclusion, omission, allowance, or disallowance was made, in one of the following relationships:
(1) husband and wife,
(2) grantor and fiduciary,
(3) grantor and beneficiary,
(4) fiduciary and beneficiary, legatee, or heir,
(5) decedent and decedent's estate,
(6) partner, or
(7) member of an affiliated group of corporations (as defined in section 1504).
For pertinent provision of § 1314 see text accompanying note 18 *infra*.
Several attempts to explicate these provisions have been made in professional literature. *E. g.,* Cohen, *Related Party Provisions of Sections 1311–1315,* 22nd Annual N.Y.U. Institute

411 (1964); Coleman, *Mitigation of the Statute of Limitations—Sections 1311–1315,* 31st Annual N.Y.U. Institute 1575 (1973); Knickerbocker, *Mysteries of Mitigation: The Opening of Barred Years in Income Tax Cases,* 30 Fordham L.Rev. 225 (1961); Maguire, Surrey and Traynor, *Section 820 of the Revenue Act of 1938,* 48 Yale L.J. 509–32, 719–78 (1939); Plumb, *The Problem of Related Taxpayers: A Procedural Study,* 66 Harv.L.Rev. 225 (1952).

2. The newspaper and related properties were sold to a third person. The assets of the World corporation were then liquidated.

3. Plaintiffs contend that there was no constructive receipt of income in 1963 under general corporate law and under applicable IRS regulations (Rev. Ruling 63–245), and that Nebraska corporate law is the same as a majority of the states that have adopted the Model Business Corporation Act. In any event this point is now belatedly conceded on this appeal.

The consequences of this error were greatly complicated by the death of Margaret Doorly on May 24, 1964. Under her will, plaintiff Katherine D. Clark was named executrix and plaintiff First National Bank of Omaha was appointed administrator, with will annexed.[4] The right to the final liquidating dividend on the 23,973 shares of World, held in Margaret Doorly's name, was included in her estate for federal estate tax purposes. Eventually a date-of-death fair market value of $17 per share was agreed upon by the Government and the estate.

On August 24, 1965, after all potential liabilities of World were resolved, the final liquidating distribution was paid. It amounted to $18.5525 per share, $0.4475 less than the $19 earlier treated as constructively received. The Margaret H. Doorly Estate income tax return for the fiscal year ending November 30, 1965, claimed a loss of $10,727.92 (23,973 shares × $0.4475) on the liquidating distribution. This return was audited and on March 28, 1967, by written notice, the Government accepted it as filed. Then the audit was reopened on October 19, 1967, and eventually the Government determined that not only was the loss improper but in fact the estate had a capital gain of $37,281.08 (23,973 shares × $1.5525).[5] It assessed a deficiency of $9,489.98 which was paid by the estate. A refund claim was formally disallowed on September 21, 1972.

The income tax returns for the Margaret H. Doorly Family Trust and its subdivisions[6] for the fiscal year ending January 31, 1966, also reported a loss of $0.4475 per share on the final liquidation of the 32,400 shares of World stock owned by the Trust. The total loss claimed amounted to $14,499.00. Upon audit, this loss was disallowed by the Government. The Government took the position that under § 1015 of the Internal Revenue Code neither gain nor loss was reportable.[7] Deficiencies were assessed against the trust which aggregated $509.12. 2. This amount was paid and claims for refund were filed which were disallowed on September 21, 1972.

After a claim for refund of the $267,771.75 overpayment was disallowed on November 14, 1974, plaintiff-trustees instituted this suit for that amount as a refund of the 1963 overpayment.[8] Unquestionably this suit is barred unless the statute of limitations is avoided by either the mitigation provisions of I.R.C. §§ 1311–1315 or equitable estoppel as urged by the trustees.

*Background of the mitigation provisions*

In 1938, the Subcommittee on Internal Revenue Taxation of the House Committee on Ways and Means recommended "that there be prepared suitable provisions under which the statute of limitations should be so adjusted as to insure the taxation of income, and the allowance of deductions, in the year to which properly allocable."[9] The Senate Finance Committee responded to this recommendation by including in the 1938 Revenue Bill provisions which subsequently became §§ 1311–1315 of the Internal Revenue Code of 1954.

---

4. The estate has apparently been closed with the residue poured over into the trust. It is stipulated that plaintiffs are the proper parties to bring this action.

5. The Government relied on the date-of-death fair market value of $17 per share used in the estate tax settlement.

6. The subdivisions were for the benefit of various family members. On this appeal we view them as a single entity.

7. Under I.R.C. § 1015 the basis of gift property is the same as the basis in the hands of the donor, in this case the $19 per share recognized as constructively received. The basis in case of loss is limited to no more than the fair market value at the time of gift, in this case $17 as reported on the gift tax return.

8. An earlier suit seeking the same relief was dismissed without prejudice when the District Court adopted the Government's position that no "determination" had yet been made regarding 1965.

9. Report of the Subcommittee on Ways and Means on a Proposed Revision of the Revenue Laws, H.Rep.No.79, 75th Cong., 3rd Sess., *quoted in* 2 Merten's, Law of Federal Income Taxation (Rev.) § 14.01 at 4.

The Senate Finance Committee Report stated that legislation was needed "to supplement the equitable principles applied by the courts" and that the proposed legislation was based upon the following principles:

(1) to preserve unimpaired the essential function of the statute of limitations, corrective adjustments should (a) never modify the application of the statute except when the party or parties in whose favor it applies shall have justified such modification by active inconsistency, and (b) under no circumstances affect the tax save with respect to the influence of the particular items involved in the adjustment.

(2) Subject to the foregoing principles, disputes as to the year in which income or deductions belong, or as to the person who should have the tax burden of income or the tax benefit of deductions, should never result in a double tax or a double reduction of tax, or an inequitable avoidance of tax.

(3) Disputes as to the basis of property should not allow the taxpayer or the Commissioner to obtain an unfair tax advantage by taking one position at the time of the acquisition of property and an inconsistent position at the time of its disposition.

(4) Corrective adjustments should produce the effect of attributing income or deductions to the right year and the right taxpayer, and of establishing the proper basis.[10]

In order to appreciate the mitigation provisions and to apply them in light of the above principles it is helpful to understand the state of the law before they were enacted, Long ago the courts recognized that the statute of limitations could result in severe inequities in the application of the income tax laws in individual cases. This is because the income tax is based on separate and distinct taxpayers paying tax on income in separate and distinct tax years. It is often difficult to decide which taxpayer is chargeable with an item of income or deduction in which tax year. As a result, correction of an error may be barred by the limitations period before the proper treatment is determined and thus either the taxpayer or the public revenues may lose.

The courts responded to the problem by resorting to the doctrines of recoupment and set-off. In a series of cases the Supreme Court approved these methods. *Lewis v. Reynolds,* 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 (1932), involved trustees seeking a refund of taxes allegedly overpaid by a decedent's estate. The Collector denied the refund after re-auditing the tax year and determining that other deductions had been improperly allowed. The Supreme Court agreed with the court of appeals that the ultimate question in the refund suit was whether there had been an overpayment. The Court stated:

Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded.

284 U.S. at 283, 52 S.Ct. at 146.

*Bull v. United States,* 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935), fleshed out the short *Lewis* opinion and gave relief to a taxpayer against the Government. Simplified, the facts of *Bull* are that a member of a partnership died and the agreement provided that the survivors would continue to operate the business and share profits with the deceased partner's estate for one year unless the estate chose to withdraw within thirty days of the death.

The Government required the estate to include for estate tax purposes the value of the right to continue in the partnership and valued this right at the amount of profits

---

10. Finance Committee Report, S.Rep.No.1567, 75th Cong., 3rd Sess. 48, *quoted in* 2 Merten's, Law of Federal Income Taxation (Rev.) § 14.02 at 9–10. *See also Karpe v. United States,* 335

F.2d 454, 460 n. 16, 167 Ct.Cl. 280 (1964), *cert. denied,* 379 U.S. 964, 85 S.Ct. 655, 13 L.Ed.2d 558 (1965).

actually received. Thereafter the Government also required the estate to report and pay income tax on the full amount of the profits. The Board of Tax Appeals denied relief from the income tax inclusion. Taxpayer then sued in the court of claims for judgment in the alternative (1) for the income tax paid or (2) for the estate tax paid. The court of claims held the income tax was properly collected and the estate tax issue was not reviewable because of the bar of the statute of limitations.

The Supreme Court reversed in a carefully reasoned opinion. It agreed that the income tax was proper and held the estate tax was improper. The Court noted that the identical money was the basis of two assessments and this was inconsistent in this case.[11] It viewed the timely income tax refund suit as in essence a mechanism for the Government to enforce its claim for taxes. The Court then discussed the estate taxes and stated that while "the money was taken through mistake without any element of fraud, the unjust retention is immoral and amounts in law to a fraud on the taxpayer's rights." 295 U.S. at 261, 55 S.Ct. at 700. Under these circumstances, the Court held the taxpayer was entitled to equitable recoupment[12] and judgment for the amount of the estate tax overpayment plus interest.[13]

The Supreme Court embraced equitable principles where "related" taxpayers were involved in *Stone v. White,* 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1285 (1937). In that case the Collector relied on decisions of the courts of appeals in assessing a deficiency against trustees for trust income. After the statute of limitations had run on assessing a deficiency against the income beneficiary, the trustees paid the tax. The Supreme Court then decided *Helvering v. Butterworth,* 290 U.S. 365, 54 S.Ct. 221, 78 L.Ed. 365 (1933), holding that such income should be taxed to the beneficiary. In the refund suit by the trustees, the Court upheld a denial of relief, stating, "No injustice is done to the trustees or the beneficiary by withholding from the trustees money which in equity is the beneficiary's, and which the government received in payment of a tax which was hers to pay." 301 U.S. at 537, 57 S.Ct. at 854.

Recoupment doctrine was clarified in *Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296, 67 S.Ct. 271 (1946), which emphasized that the various claims must arise from the same "transaction." The Supreme Court refused to permit recoupment of erroneous payments of excise taxes in the years between 1919 and 1922 against income and excess profits taxes paid on a refund in 1935 of excise taxes erroneously paid between 1922 and 1926. The Court

11. The Court suggested a distinction between the facts of *Bull* and a situation where the right to receive an amount and the actual receipt are treated as distinct taxable items. 295 U.S. at 256, 55 S.Ct. 695. Since *Bull* involved estate and income taxes rather than two income taxes, we think the facts of this case come closer to the inconsistency condemned in *Bull.*

12. The Court said, "[R]ecoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely." 295 U.S. at 262, 55 S.Ct. at 700.

13. *Bull* has frequently been cited by the Supreme Court in tax and non-tax cases. *E. g., United States v. Janis,* 428 U.S. 433, 440, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *Perez v. Ledesma,* 401 U.S. 82, 127 n. 17, 91 S.Ct. 674, 27 L.Ed.2d 701 (Brennan, J., dissenting in part and concurring in part, 1971); *Zenith Corp. v.*

*Hazeltine Research, Inc.,* 395 U.S. 100, 108 n. 2, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); *United States v. Vermont,* 377 U.S. 351, 359, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964); *Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296, 299, 303, 67 S.Ct. 271, 91 L.Ed. 296 (1946); *Commissioner v. Gooch Milling & Elevator Co.,* 320 U.S. 418, 421, 64 S.Ct. 184, 88 L.Ed. 139 (1943); *United States v. U. S. F. & G.,* 309 U.S. 506, 511 n. 6, 60 S.Ct. 653, 84 L.Ed. 894 (1940); *Guaranty Trust Co. v. Commissioner,* 303 U.S. 493, 496, 58 S.Ct. 673, 82 L.Ed. 975 (1938); *Stone v. White,* 301 U.S. 532, 539, 57 S.Ct. 851, 81 L.Ed. 1285 (1937). *Gooch* held that the Board of Tax Appeals lacked jurisdiction to consider recoupment claims. None of these cases, other than *Gooch,* questioned the recoupment doctrine, and *Gooch* explicitly stated that the Court was "not called upon to determine the scope of equitable recoupment when asserted * * * in tribunals possessing general equity jurisdiction." 320 U.S. at 421, 64 S.Ct. at 186.

refused to expand recoupment beyond *Bull* and *Stone* and said it is "only to permit a transaction which is made the subject of a suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole." 329 U.S. at 299, 67 S.Ct. at 272. *Electric Storage Battery Co.* was decided after the first mitigation provisions were enacted but was not governed by them and did not discuss them.[14]

After reviewing this case law it is easy to see why Congress enacted the mitigation provisions in 1938. First, it was not clear when relief from the statute of limitations would be available. Apparently double payment or complete avoidance of tax was required, although the concepts of inconsistency and mistake were involved. The use of "immoral," "fraud in law" and "equity" added the serious problem of vagueness in the revenue laws and encouraged litigation. The measure to be applied when the remedy was allowed also caused problems. A refund was justified only if an overpayment was shown by a re-audit. However, a refund could be recovered for a year barred by the statute of limitations as long as the same transaction was involved in a year not barred. Finally, recoupment was allowed against related parties but apparently an unspecified identity of interest was required. *Schlemmer v. United States,* 94 F.2d 77, 78 (2d Cir. 1938).

■ After reviewing the legislative history, the prior case law and, most importantly, the language of the statute, we think the intent of Congress is clear. The mitigation provisions were intended to insure that if certain prerequisites were met either the Government or the taxpayer would be able to secure relief. Second, if relief were allowed it would not be diminished by consideration of any item other than the one that was the subject of the error. Finally, the goal was to leave the parties in as near as possible the position they would have been in if the item had been properly treated through the years.

### Application of the mitigation provisions

Internal Revenue Code § 1311 sets out the requirements for avoidance of the normal statute of limitations period by virtue of the mitigation provisions, This is supplemented by I.R.C. § 1312, stating the "circumstances of adjustment," and I.R.C. § 1313, providing additional definitions. On this appeal the Government makes three challenges of the applicability of the mitigation provisions: (a) the Commissioner's position adopted in the determination of the 1965 tax liability was not inconsistent with the 1963 error; (b) there was no "item of income" included in the 1965 gross income of the Margaret H. Doorly Family Trust; and (c) Margaret H. Doorly and her estate did not meet the required status of "related taxpayers." We will consider those arguments seriatim.

### (a) inconsistency

As applied in this case, I.R.C. § 1311(b)(1)(A) requires that there be "adopted in the determination [*i. e.*, the final 1965 tax treatment] a position maintained by the Secretary or his delegate * * [which is] * * * inconsistent with the erroneous inclusion" in Margaret Doorly's 1963 income. It is plain that the determination of the 1965 income tax liabilities of the Doorly estate and the Doorly trust adopted positions maintained by the Government. Losses claimed by the estate and trust were disallowed and the estate was required to recognize income from the final liquidation distribution of World. Deficiencies were assessed and paid.

The Government urges that these positions are not inconsistent because the 1965 treatment arose from the application of basis rules in I.R.C. §§ 1014 and 1015. According to the Government, those sections resulted in the estate having a date-of-death fair market value basis of $17 per share and thus a gain to be recognized. The trust escaped recognized gain or loss because its gain basis was $19, presumably because the grantor had recognized that

---

**14.** The mitigation statutes only apply to tax years beginning on or after January 1, 1932.

amount in 1963; and its loss basis was $17, determined by the fair market value at the time of the gift.

 Taxpayers do not refute this reasoning. Neither party has cited authority determining whether such basis determinations avoid the label of inconsistency where income which is realized only once is required to be recognized twice for income tax purposes. Although we are not sure that the Government is accurate in stating that *Joyce v. United States*, 361 F.2d 602, 606 (3rd Cir. 1966), "held that the Commissioner's subsequent determination must be 'logically inconsistent' with the erroneous treatment of the item in the earlier year in order to adjust such earlier year," we think the correct standard is logical inconsistency. Applying that standard, it is clear that under our system of annual income tax accounting it is inconsistent to require the same money to be recognized and accounted for in income tax returns in two different years. *Cf. Bull v. United States, supra,* 295 U.S. at 256, 55 S.Ct. 695. Assuming that a literal application of the constructive receipt and basis doctrines would justify the result, it does not change its basic inconsistency and does not prevent the application of the mitigation provisions where the earlier tax treatment was erroneous. We think the District Court correctly held that the Government's positions were inconsistent.

*(b) double inclusion of income item*

Section 1312 describes the circumstances under which the mitigation provisions apply. The facts of this case are alleged to fall within subsection (1):

Double inclusion of an item of gross income.—The determination requires the inclusion in gross income of an item which was erroneously included in the gross income of the taxpayer for another taxable year or in the gross income of a related taxpayer.

I.R.C. § 1312(1).

 The Government does not actively challenge the District Court's holding that this case involves such a double inclusion of income insofar as the estate is concerned.

The estate was required to account for, as income, the contingency reserve when it was distributed in 1965. It had already been taxed as constructively received in 1963. Although the stepped-up, date-of-death basis used by the estate reduced the tax liability, we think it evident that there was a double inclusion of an item of income.

The Government vigorously contends that the tax treatment afforded the trust did not amount to a double inclusion of an item of income. It points out that only a loss deduction was disallowed in 1965; nothing new was required to be included. The District Court relied on the broad definition of "item of income" in *Gooch Milling & Elevator Co. v. United States*, 78 F.Supp. 94, 100, 111 Ct.Cl. 576 (1948), which held, "The term 'item' * * * should be interpreted to include any item or amount which affects gross income in more than one year * *." The District Court noted that "[t]he unexpended pro rata share of the reserve is an item of income which remains the same item in both years despite the disparity of treatment * * *."

Under our view of the law to be applied in calculating the refund, the question of inclusion of an "item of income" in the trust becomes purely academic. This is because the inclusion of an "item of income" in the estate triggers an analysis and adjustment of the whole transaction.

*(c) related parties*

 The final Government challenge to the applicability of the mitigation provisions is that Margaret Doorly and her estate did not meet the definition of related taxpayers in I.R.C. § 1313(c). Although "decedent and decedent's estate" is listed as an included relationship, the Government argues that the statute literally requires that the relationship exist "in the taxable year with respect to which the erroneous inclusion" occurred. Since the error occurred in 1963 and Mrs. Doorly died in 1964, the Government claims the statutory requirements are not met.

The Government concedes that under its view the Congress corrected only one of two situations that involve the same inequities, *i. e.* correction is made only when the error is made by the executor. We are not sure that the hypertechnical approach urged by the Government would permit even that application in most cases. We reject the Government's narrow construction, as the statute itself enumerates various relationships involved; when these relationships occur, the ameliorative provisions should apply fully to each party.

■ The Government argues that this temporal restriction is inherently logical because a related party should recover only when the relationship itself creates the uncertainty of entity to be taxed that results in error. This is not convincing because the Government's own regulations permit adjustments involving tax treatment of related parties where the error is unrelated to the statutory relationship.[15] This circuit has long taken the position that the mitigation provisions should not be so strictly or narrowly interpreted that their purpose is defeated. *Taxeraas v. United States*, 269 F.2d 283, 289 (8th Cir. 1959); *United States v. Rosenberger*, 235 F.2d 69, 73 (8th Cir. 1956). We agree with the District Court that the trust and Mrs. Doorly were related parties; we also hold that the estate and Mrs. Doorly were related parties.

In summary, we affirm the District Court's holding that the prerequisites for application of the mitigation provisions were met. The statute of limitations was thus extended one year beyond the date of final determination of the 1965 tax liability, which was September 21, 1974. This action was timely filed on January 27, 1975, but the issue of the proper amount of refund remains.

*Amount to be refunded*

■ In determining the amount of refund it is necessary to keep in mind Congressional intent and the purposes meant to be served by the mitigation provisions. As we noted above, the mitigation provisions were enacted in response to a House committee recommendation that the statute of limitations be modified to ensure taxation of income in the year to which it is properly allocable. This was carried over in the Senate Finance Committee report as a principle on which the legislation was based. Finally, the mitigation provisions were meant to supplement the equitable doctrines previously developed and applied by the courts.[16] Assuming, without deciding, that the mitigation provisions are the exclusive remedy in the area where they apply,[17] that remedy should be interpreted as consistent with equitable principles unless a contrary intention is manifest in the statute.

Section 1314 provides for the amount and method of adjustment. It provides in pertinent part:

> (a) Ascertainment of amount of adjustment.—In computing the amount of an

---

**15.** Treas.Reg. § 1.1313(c)—1 (1962). This logical argument is also weakened by the Government's position that correction would be allowed when the error occurs in the tax treatment of the estate after the taxpayer's death.

**16.** *McEachern v. Rose*, 302 U.S. 56, 58 S.Ct. 84, 82 L.Ed. 46 (1937), rejected on statutory grounds the application of equitable principles. *McEachern* differs from the present case in that the failure of the Government to assess the appropriate tax in 1928 was not attributable to the erroneous statements made in the returns for the years which were the subject of the refund suit. *Id.* at 59, 58 S.Ct. 84. *McEachern* approved *Stone v. White*, noting that no statutes precluded equitable relief. *McEachern* did not mention *Bull.* Both *Bull* and *Stone* were later approved as to liabilities arising from a

single transaction. *Rothensies v. Electric Storage Battery Co.*, 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296 (1946). In enacting the provisions mitigating the statute of limitations, Congress clearly intended to supplement equitable principles except where a contrary intent is shown.

**17.** *See, e. g., Brigham v. United States*, 470 F.2d 571, 577, 200 Ct.Cl. 68 (1972), *cert. denied*, 414 U.S. 831, 94 S.Ct. 62, 38 L.Ed.2d 65 (1973). *Brigham* involved treatment of separate annual installments from a sale of property. It is evident that neither the mitigation provisions nor recoupment under *Stone* and *Bull* applied. To the extent that dicta in that opinion disagree with our analysis, we think *Brigham* is incorrect.

adjustment under this part there shall first be ascertained the tax previously determined for the taxable year with respect to which the error was made. The amount of tax previously determined shall be the excess of—(1) the sum of—(A) the amount shown as the tax by the taxpayer on his return (determined as provided in section 6211(b)(1), (3), and (4), relating to the definition of deficiency), if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus (B) the amounts previously assessed (or collected without assessment) as a deficiency, over—(2) the amount of rebates, as defined in section 6211(b)(2), made. There shall then be ascertained the increase or decrease in tax previously determined which results solely from the correct treatment of the item which was the subject of the error (with due regard given to the effect of the item in the computation of gross income, taxable income, and other matters under this subtitle). * * * The amount so ascertained (together with any amounts wrongfully collected as additions to the tax or interest, as a result of such error) for each taxable year shall be the amount of the adjustment for that taxable year.

(b) Method of adjustment.—The adjustment authorized in section 1311(a) shall be made by assessing and collecting, or refunding or crediting, the amount thereof in the same manner as if it were a deficiency determined by the Secretary with respect to the taxpayer as to whom the error was made or an overpayment claimed by such taxpayer, as the case may be, for the taxable year or years with respect to which an amount is ascertained under subsection (a), and as if on the date of the determination one year remained before the expiration of the periods of limitation upon assessment or filing claim for refund for such taxable year or years.

(c) Adjustment unaffected by other items.—The amount to be assessed and collected in the same manner as a deficiency, or to be refunded or credited in the same manner as an overpayment, under this part, shall not be diminished by any credit or set-off based upon any item other than the one which was the subject of the adjustment. The amount of the adjustment under this part, if paid, shall not be recovered by a claim or suit for refund or suit for erroneous refund based upon any item other than the one which was the subject of the adjustment.[18]

■ It is obvious from the plain and ordinary meaning of the statute that in this case the computation of the amount of adjustment under subsection (a) is made solely from comparing the correct and erroneous treatment of the liquidation reserve in 1963. Subsection (a) depends on the "item which was the subject of the error." Qualitatively that was the 1963 inclusion of the constructive receipt of $19 per share on the total 56,373 shares. The statute plainly prevents our adopting the Government's argument that would define the term retrospectively by the quantitative treatment accorded it in 1965. *Cory v. Commissioner*, 261 F.2d 702, 705 (2d Cir. 1958), *cert. denied*, 359 U.S. 966, 79 S.Ct. 877, 3 L.Ed.2d 834 (1959). Even if this were not clear, the Government's position would fail to accomplish the legislative goal of attributing income to the right year and right taxpayer. It would also leave the Government with a sizable undeserved windfall.[19]

Upon a careful review of the statute and the facts as stipulated and conceded by the Government, we think the District Court properly determined the adjustment under § 1314(a). However, the determination of

---

18. For text of §§ 1311–1313, see note 1 *supra*.

19. The Government's approach would fail to give the estate the benefit of a stepped-up, date-of-death basis. In a footnote in its brief and in oral argument, the Government argued that the 1965 receipt was income in respect to a decedent. This was not fully briefed by the parties and we decline to decide the question based on this record.

the refund to be ordered does not end there.[20]

■ As we noted above, the Supreme Court had applied equitable principles prior to adoption of the mitigation provisions. *Lewis* held the Government could conduct a complete re-audit and offset any deficiency, even if barred by the statute of limitations, against refund claims. *Bull* held that recoupment of time-barred estate taxes was available to a taxpayer in a dispute over income taxes properly imposed on the same money when received by the estate. *Stone* held that the Government was entitled to offset time-barred income taxes owing from a beneficiary against a claim for refund of income taxes on the same income erroneously paid by the trustee. The mitigation provisions were meant to supplement this case law development. The only part of the statute that limits this is § 1314(c), providing that the amount refunded shall not be diminished by any "set-off based upon any item *other than the one which was the subject of the adjustment.*"[21] (Emphasis added.) The plain import of that language is that re-audits under *Lewis* would not be allowed in refunds under the mitigation provisions. There is no reason to think that Congress intended to limit *Bull* and *Stone* which involved multiple treatment of funds arising from a single transaction.[22]

Our view of the statute and case law carries out the legislative purpose. If a complete re-audit were permitted, the statute of limitations would be weakened and litigation would be encouraged rather than amicable settlement when errors and inconsistencies are pointed out. Similarly, if the principles of *Bull* and *Stone* were not applied, the goal of attributing income to the right year and the right taxpayer could be frustrated. Obviously, where the effect of the same item is involved, the proof problems that would encourage litigation in the re-audit situation are missing. We think it appropriate and in keeping with the statutes involved, now as nearly as possible to place the parties in the same position, tax-wise, that they would have been in had the error of the 1963 tax payment not occurred. No further demand for recoupment of taxes by either party is required. *Cf. Bull v. United States*, 295 U.S. 247, 263, 55 S.Ct. 695, 79 L.Ed. 1421 (1935); *Zeeman v. United States*, 395 F.2d 861, 869–70, (2d Cir. 1968). A refund giving consideration to the overpayment of 1963 taxes, and whatever other taxes, income or estate, that may be due the Government, should be calculated according to the principles of our interpretation of §§ 1311 *et seq.* and *Bull* and *Stone*.[23]

On remand the District Court must examine the Doorly estate tax return[24] and

**20.** We recognize that, in the vast majority of cases under the mitigation provisions, § 1314(a) will determine the proper refund. Here the splitting of the item after the year of error and the death of Mrs. Doorly calls into play equitable principles not barred by the statute.

**21.** I.R.C. § 1314(c).

**22.** The transaction that resulted in all tax liabilities involved in this appeal was the payment of the $19 liquidation distribution reserve.

**23.** *Cf. United States v. Rosenberger*, 235 F.2d 69 (8th Cir. 1956). In *Rosenberger*, a Government counterclaim using the mitigation provisions was the determination that permitted the taxpayer to sue under the mitigation provisions for a refund for a different tax year. If recoupment were not available in this case the Government might be forced to seek a deficiency for 1965 and the estate taxes. Thus, our decision serves the salutary purpose of bring-

ing this litigation to a rapid close and saving the courts, the Government and the taxpayer additional time and expense. Since we hold that the plaintiffs are entitled to recover under the mitigation provisions, we need not consider plaintiffs' alternate argument of estoppel.

**24.** *See* Note, "Equitable Recoupment in Tax Law," 42 N.Y.U.L.Rev. 537, 543–44 (1967). We assume the date-of-death fair market value of this refund claim should have been included in the Doorly estate. That value would have been something less than the face value of the overpayment plus interest accrued through the date of Mrs. Doorly's death. *Bank of California v. Comm'r.*, 133 F.2d 428, 432–33 (9th Cir. 1943). The fact that the statute of limitations would now bar a separate suit for the estate tax deficiency does not prevent recoupment in this action. *See* I.R.C. § 6501(a) and (e)(2); 2 Fed. Est. & Gift Tax Rep. (CCH) ¶ 9860.052.

Perhaps on remand the parties will be able to propose a more appropriate method of dealing

the 1965 income tax returns of the estate and the trust. To the extent that the correct 1963 treatment of the liquidation would have increased these later liabilities, the refund now sought must be reduced. In doing this it must be remembered that the taxpayer is entitled to interest on the amount of overpayment up to the date each (underpaid) amount was due.[25] It must also be kept in mind that any underpayments must be deducted from the overpayment principal.[26]

In other words, the parties should be placed as nearly as possible in the position that they would have been in if the error in the 1963 tax payment had not been made. Neither side is to gain a windfall, nor is any avoidance of taxes that should have been paid on the item in question permitted.

Judgment affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.

with the estate tax problem than the method we have suggested. They were unable to do so at oral argument.

25. We note that the interest rate applicable to refund claims has varied over the long period involved here. *See* I.R.C. § 6621 and regulations thereunder.

26. This is vitally important to insure the proper amount of interest is allowed for later periods and to avoid any need to calculate interest due the Government on underpayments.