# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2537
_____

Illinois Lumber and Material Dealers Association Health Insurance Trust

*Plaintiff - Appellee*

v.

United States of America

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 10, 2015
Filed: July 23, 2015

_____

Before WOLLMAN, BEAM, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Illinois Lumber and Material Dealers Association Health Insurance Trust ("Illinois Lumber") is a tax-exempt insurance trust operating under 26 U.S.C. (I.R.C.) § 501(c)(9). Illinois Lumber purchased life insurance policies issued by General American Mutual Holding Company ("GAMHC"), a mutual insurance company. In 2003, GAMHC began the process of demutualization, converting from an insurer owned by its policyholder members to one owned by stockholders. See generally

Dorrance v. United States, 877 F. Supp. 2d 827, 829-30 (D. Ariz. 2012).[1]  In September 2003, Illinois Lumber received a $1,474,442.30 liquidating distribution and a letter reporting that GAMHC had obtained a private ruling from the IRS that membership interests qualified as capital assets and "the entire amount of the initial distribution . . . will constitute long-term capital gain."  Illinois Lumber reported the gain on its Unrelated Business Income Tax Return for fiscal year 2004 and paid a capital gains tax of $200,686.  Illinois Lumber received additional GAMHC distributions of $285,647 and $213,567, which it reported as taxable capital gains on its fiscal 2006 and 2008 tax returns.

The IRS adopted the position that a policyholder's proprietary interest in a mutual insurance company has a tax basis of zero in Revenue Ruling 71-233, 1971-1 C.B. 113.  In 2008, the Court of Federal Claims rejected that position. Fisher v. United States, 82 Fed. Cl. 780, 795-97 (2008).  Illinois Lumber then filed refund claims for the capital gains taxes paid in 2004, 2006, and 2008.  The IRS delayed ruling on the refund claims until the Federal Circuit affirmed the Court of Claims in Fisher v. United States, 333 F. App'x 572 (Fed. Cir. 2009).  Citing the Federal Circuit's decision, the IRS allowed Illinois Lumber's refund claims for 2006 and 2008 and paid refunds of $42,847 and $32,035 in July 2010.  However, in June 2011, the IRS denied Illinois Lumber's claim for a 2004 refund because the claim was not filed within the three year statute of limitations in I.R.C. § 6511(a).

After exhausting administrative appeals, Illinois Lumber brought this action seeking a refund of the alleged capital gains tax overpayment in fiscal year 2004. See 28 U.S.C. § 1346(a)(1). The district court denied the government's motion to dismiss for lack of jurisdiction because the claim was time-barred and granted Illinois Lumber's motion for summary judgment, concluding that the Internal Revenue Code's mitigation provisions, I.R.C. §§ 1311-1314, apply and permit correcting the

---

[1]Appeal argued, Nos. 13-16548 and 13-16635 (9th Cir. Apr. 9, 2015).

erroneous recognition of gain in 2004 that would otherwise be time-barred. See Ill. Lumber . . . Health Ins. Trust v. United States, Civil No. 13-CV-715, 2014 WL 1757861 (D. Minn. Apr. 30, 2014). The government appeals. Reviewing the interpretation and application of the mitigation provisions *de novo*, we reverse.

## I.

Generally, a taxpayer must file an administrative claim for refund with the IRS within three years of the time the tax return was filed or within two years of the time the tax was paid. I.R.C. § 6511(a). Because the United States cannot be sued without its consent, filing a timely refund claim with the IRS is a jurisdictional prerequisite to a tax refund lawsuit. See I.R.C. § 7422(a); Chernin v. United States, 149 F.3d 805, 813 (8th Cir. 1998). Illinois Lumber's 2004 return was filed on July 25, 2004; no claim for refund was filed before November 23, 2008; therefore, its refund lawsuit was untimely.

Because the federal income tax applies to complex transactions and is reported and paid on an annual basis, the statute of limitations can result in severe inequities; "correction of an error may be barred by the limitations period before the proper treatment is determined and thus either the taxpayer or the public revenues may lose." First Nat'l Bank of Omaha v. United States, 565 F.2d 507, 512 (8th Cir. 1977). After federal courts struggled for decades to find equitable solutions to such dilemmas, Congress enacted the first mitigation provisions in 1938. The narrow purpose was to fashion a statutory remedy for situations in which -

> under existing law, an unfair benefit would have been obtained by [either the taxpayer or the IRS] assuming an inconsistent position and then taking shelter behind the protective barrier of the statute of limitations. Such resort to the statute of limitations is a plain misuse of its fundamental purpose. The purpose of the statute of limitations to prevent the litigation of stale claims is fully recognized and approved.

But it was never intended to sanction active exploitation, by the beneficiary of the statutory bar, of opportunities only open to him if he assumes a position diametrically opposed to that taken prior to the running of the statute.

S. Rep. No. 75-1567, at 49 (1938). The statute was complex and controversial when first enacted, has been amended frequently, and has spawned conflicting judicial interpretations that are hard to reconcile. See, e.g., Note, Sections 1311-15 of the Internal Revenue Code: Some Problems in Administration, 72 Harv. L. Rev. 1536, 1539 (1959).

The current mitigation provisions permit Illinois Lumber to obtain a refund of 2004 capital gains tax that would otherwise be barred by § 6511(a) if (1) there was a "determination" as defined in I.R.C. § 1313(a); (2) the determination fell within one of the "circumstances of adjustment" listed in I.R.C. § 1312; and (3) "the party against whom the mitigation provisions are being invoked [here, the Secretary of the Treasury] has maintained a position inconsistent with the challenged erroneous inclusion . . . of income" in Illinois Lumber's 2004 return. O'Brien v. United States, 766 F.2d 1038, 1042 (7th Cir. 1985); see I.R.C. § 1311; Taxeraas v. United States, 269 F.2d 283, 289 (8th Cir. 1959) ("one claiming the benefits [of mitigation] must assume the burden of proving the existence of the prerequisites to its applicability").

The first two requirements raise thorny interpretive issues that we need not resolve in this case. The parties agree that the only potentially applicable "circumstance of adjustment" is § 1312(7), which provides in relevant part:

> **(7) Basis of property after erroneous treatment of a prior transaction. --**
>
> **(A) General rule. --** The determination determines the basis of property, and in respect of any transaction on which such basis depends, or in respect of any transaction which was erroneously treated as

affecting such basis, there occurred . . . any of the errors described in subparagraph (C) of this paragraph.

* * * * *

**(C) Prior erroneous treatment. --** With respect to a taxpayer described in subparagraph (B) . . .

**(i)** there was an erroneous inclusion in, or omission from, gross income, [or]

**(ii)** there was an erroneous recognition, or nonrecognition, of gain or loss . . . .

The legislative history and the Treasury Regulations provide examples of when a taxpayer may successfully invoke this circumstance of adjustment:

In 1931 the taxpayer received securities of corporation A having a fair market value of $5,000 in exchange for securities of corporation B which cost him $12,000. The taxpayer treated the exchange as one in which gain or loss was not recognizable and upon audit the return was accepted as filed. He sold the A securities in 1937 for $15,000 and reported $3,000 gain. After the statute of limitations had run on refund claims for 1931, the Commissioner asserted a deficiency for 1937 on the ground that the loss realized on the exchange in 1931 was erroneously treated as nonrecognizable, and that the basis for gain or loss upon the sale was $5,000, resulting in a gain of $10,000. The taxpayer and the Commissioner then entered into a closing agreement for 1937 in which the taxpayer agreed to the Commissioner's determination. To prevent the inconsistent resort to the lower basis resulting in complete denial of a deduction for the loss sustained in 1931, an adjustment would be made . . . .

S. Rep. No. 75-1567, at 49; see Treas. Reg. § 1.1312-7, ex. 4. In general, commentators agree that, as one put it, "[t]he opacity of the mitigation provisions

probably reaches its zenith with" the circumstance of adjustment in § 1312(7). John A. Lynch, Jr., Income Tax Statute of Limitations: Sixty Years of Mitigation -- Enough, Already!!, 51 S.C.L. Rev. 62, 87 (1999). Another concluded that the basis provision "cries for amendment; and . . . until amendment comes, we are likely to see some hard cases decided in harsh ways and others in total disregard of the statute." Daniel Candee Knickerbocker, Jr., Mysteries of Mitigation: The Opening of Barred Years in Income Tax Cases, 30 Fordham L. Rev. 225, 258 (1961).

"Tax basis is the amount used as the cost of an asset when computing how much its owner gained or lost for tax purposes when disposing of it." United States v. Woods, 134 S. Ct. 557, 561 (2013); see I.R.C. § 1012. Consistent with that principle, courts have found that a policyholder's tax basis in the proprietary portion of a demutualized interest depends upon the initial acquisition of the interest, typically, when mutual insurance policy premiums were paid. See Fisher, 82 Fed. Cl. at 799; Dorrance, 877 F. Supp. 2d at 837; Stephen J. Olsen, Chuck vs. Goliath: Basis of Stock Received in Demutualization of Mutual Insurance Companies, 9 Hous. Bus. & Tax L. J. 360, 382 (2009). Applying the awkward language of § 1312(7)(A) in this context is indeed perplexing.

Section 1313(a)(3)(B) provides that the Secretary's final disallowance of a claim for refund is a qualifying determination "as to items with respect to which the claim was disallowed . . . on expiration of the time for instituting suit with respect thereto (unless suit is instituted before the expiration of such time)." Applying § 1313(a)(3), the district court concluded that the qualifying "determination" in this case was the Secretary's final disposition of Illinois Lumber's claim for refund. Ill. Lumber, 2014 WL 1757861, at *11. On appeal, the government argues the district court erred because Illinois Lumber timely instituted this refund suit. We need not decide that mystifying question of statutory construction because there is a more fundamental flaw in the district court's "determination" decision.

-6-

The Secretary denied Illinois Lumber's claim for refund of 2004 tax paid because the claim was untimely. Therefore, even if that ruling was a "determination," it was not a "determination [that] determine[d] the basis of property," as § 1312(7)(A) requires. The IRS disallowance correspondence noted that the claim would have been granted had it been timely filed, but that volunteered comment was not a "determination [of] the basis of property." On the other hand, the Secretary's prior allowance of Illinois Lumber's timely claims for refund of capital gains taxes paid in 2006 and 2008 was a determination establishing that Illinois Lumber had erroneously determined the basis of its demutualized interest in 2004. However, whether that determination could qualify Illinois Lumber for adjustment of a time-barred 2004 error affecting basis under § 1312(7) is an issue -- not addressed by the parties or the district court -- that has produced conflicting judicial decisions and commentary. See Knickerbocker, Mysteries of Mitigation, 30 Fordham L. Rev. at 255-58; Lynch, Sixty Years of Mitigation, 51 S.C.L. Rev. at 87-92; and cases cited.

In our view, the answer to the mitigation question in this case becomes clear when we focus on the third prerequisite, an "inconsistency" that provides the party invoking the statute of limitations an advantage by "assum[ing] a position diametrically opposed to that taken prior to the running of the statute." S. Rep. No. 75-1567, at 49, codified in § 1311(b)(1). There was no such inconsistency by the government in this case. First, the IRS did not actively change its longstanding position that mutual policyholders' proprietary interests have a zero basis when an insurance company demutualizes. The Secretary simply acquiesced in the Federal Circuit's rejection of that position. Second, focusing on the basis issue, the government gained no "unfair tax advantage by taking one position at the time of the acquisition of property and an inconsistent position at the time of its disposition." S. Rep. No. 75-1567, at 50.[2] It simply allowed Illinois Lumber's timely claims for

_____

[2]Compare United States v. Rosenberger, 235 F.2d 69, 71-73 (8th Cir. 1956), where the government, litigating an issue affecting basis in one tax year, offset the

-7-

refund based upon judicial rejection of the IRS's prior position, while asserting that the statute of limitations barred review of the issue in 2004, a closed tax year.

This principle is well-illustrated by a case the government emphasized on appeal but failed to cite to the district court. In <u>Brigham v. United States</u>, 470 F.2d 571 (Ct. Cl. 1972), taxpayers sold shares in a corporation on an installment basis, reported the gains each year as capital gains, and protested when the IRS reclassified the gain in 1962 as ordinary income. The Commissioner conceded the issue for the 1962 tax year based on a Revenue Ruling that had acquiesced in a contrary 1965 Supreme Court decision. Taxpayers then filed refund claims for the 1958-1961 tax years. The Court of Claims held that the mitigation provisions did not apply and the claims were therefore time-barred:

> The crucial issue is whether the Commissioner of Internal Revenue has *actively maintained* a position with regard to the 1962 determination which is inconsistent with the erroneous inclusion or recognition. The requirement of the *maintenance* of the inconsistent position is basic to the existence of the statutory mitigation provisions. . . . Otherwise, the mitigation provisions will not permit the taxpayers to "awaken the sleeping dog."

> \* \* \* \*

> The Revenue Ruling was, in effect, an acquiescence with the *Brown* decision of the United States Supreme Court. . . . The function of the ruling was acquiescence, not command. . . . The Commissioner has not attempted to exploit the statute of limitations by adopting an inconsistent stance for an open year. The Commissioner, to the contrary, has merely acceded to the plaintiffs' demand for the open year. . . . In the factual pattern before us, adjustments for one year do not have

taxpayer's recovery by acquiescing in the taxpayer's change of position. We concluded this created an unfair advantage that should be adjusted under the mitigation provisions by making the same basis-affecting change in a closed year.

a consequential effect on other years . . . . After a change in the interpretation of the law, the taxpayers are attempting to reopen closed years . . . .

470 F.2d at 574-76 (emphasis in original; citation omitted). That is the situation in this case. By contrast, in First National Bank of Omaha, we applied the circumstance of adjustment in § 1312(1) because "under our system of annual income tax accounting it is inconsistent to require the same money to be recognized and accounted for in income tax returns in two different years." 565 F.2d at 515. We observed that it was "evident" the mitigation provisions did not apply in Brigham. Id. at 516 n.17.

We conclude that Brigham is persuasive authority in this case. The fairness or unfairness of reopening Illinois Lumber's closed 2004 tax year is no different than if the IRS had allowed a *different* GAMHC mutual policyholder's timely claims for refunds of capital gains taxes paid in 2006 and 2008. In other words, Illinois Lumber urges us to interpret the mitigation provisions as allowing taxpayers to reopen closed tax years based upon a favorable change in, or reinterpretation of, the income tax laws. That would be fundamentally inconsistent with the congressional intent in enacting the mitigation provisions to "preserve unimpaired the essential function of the statute of limitations." Taxeraas, 269 F.2d at 289, citing S. Rep. No. 75-1567. It would also have a potentially substantial impact on federal tax revenues that Congress clearly did not intend.

For these reasons, the district court construed the "inconsistent position" provision in § 1311(b)(1) far too broadly in concluding that "a taxpayer may claim a refund for a barred year where the correct result is given effect in an open year by a determination, and that correct result is inconsistent with the treatment of the item in a barred year." Illinois Lumber, 2014 WL 1757861, at *15 (quotation omitted). For the mitigation provisions to apply, there must be an "inconsistency" that, unless

adjusted, will cause the types of unfair results in successive tax years described in § 1312.  Here, there was no inconsistency, merely different results in successive tax years resulting from a judicially-imposed change in the tax treatment of a complex transaction.  Had Illinois Lumber timely challenged the IRS's position, as the taxpayer did in Fisher, it would have obtained a refund of the capital gains tax in 2004, as well as in 2006 and 2008.  Having slept on its rights in 2004 beyond the applicable statute of limitations, it may not use the mitigation provisions to "awaken the sleeping dog."

The judgment of the district court is reversed.  Because the mitigation provisions do not apply, Illinois Lumber's refund claim is time-barred.  Accordingly, we remand with instructions to dismiss the complaint for lack of jurisdiction.

_____